The STATE of Oklahoma, ex rel. Jan Eric CARTWRIGHT, Attorney General, Petitioner,

v.

Frank OGDEN, District Judge of the First Judicial District, State of Oklahoma, Allen Gottsch, Jim Lane, Don Dale, Associate District Judges of the First Judicial District, State of Oklahoma, Respondents.

No. 58686.

Supreme Court of Oklahoma.

July 15, 1982.

Supplemental Order on Rehearing Nov. 8, 1982.

Rehearing Denied Nov. 9, 1982.

Jan Eric Cartwright, Atty. Gen., Patrick W. Willison, Neal Leader, Asst. Attys. Gen., Oklahoma City, for petitioner.

David K. Petty, Larry L. Field, Guymon, M.C. Kratz, Gen. Counsel, School Land Com'n, Oklahoma City, for respondents.

LAVENDER, Justice:

■ Original jurisdiction is properly urged pursuant to Art. 7, § 4 of the Oklahoma Constitution which provides: "The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all

Agencies, Commissions and Boards created by law."

The issues which are hereinafter discussed are matters of *publici juris.*

We therefore assume original jurisdiction.

Following the rendition of our opinion in *Oklahoma Ed. Ass'n, Inc. v. Nigh,* Okl., 642 P.2d 230, rehearing denied March 30, 1982, the State of Oklahoma, trustee of the State and School Lands Trust, a constitutional trust by and through its duly designated and acting administrator, the Commissioners of the Land Office of the State of Oklahoma, filed three suits in the District Court of Oklahoma County, Oklahoma, identically captioned IN THE MATTER OF THE STATE AND SCHOOL LANDS TRUST, A CONSTITUTIONAL TRUST and alleging in identical language allegations epitomized as follows:

1. The place of residence and business of the Administrator is the City of Oklahoma City, Oklahoma.

2. The Administrator is charged by Art. VI, § 32 of the Oklahoma Constitution with the duty of the sale, rental, disposal, and managing of the school lands and other public lands of the State and of the funds and proceeds derived therefrom, under rules and regulations prescribed by the Legislature, for the use and benefit of the trust beneficiaries.

3. The necessary parties to the suit are those persons or entities, governmental or otherwise, actually designated by name in the Constitution and statutes of the State of Oklahoma and those persons and/or entities, governmental or otherwise, actually receiving distributions from the trust at the time of the filing of the suit, and additional persons who may be affected by the suit.

4. At a meeting of the administrator of the trust held on March 2, 1982, the Administrator ordered its attorneys to seek approval of certain procedures activated or contemplated by the Administrator as being in compliance with our judgment in *Oklahoma Ed. Ass'n, Inc. v. Nigh, supra,* and the Trust instruments, the Enabling Act of the State of Oklahoma, and Art. XI of the Oklahoma Constitution.

The first of the Oklahoma County District Court suits involved the present system of leasing state-owned mineral rights under Administrator's control for oil and gas purposes; the second farm loan proceeds in situations where loan applications were approved but loan proceeds were not disbursed prior to the Supreme Court opinion; and the third suit involved pending farm loans which the Administrator approved and funds were partially disbursed prior to the Supreme Court opinion, wherein Administrator sought approval of its proposal to reinstate pay-out of the balance of the farm loan proceeds.

A consolidated hearing was had by the Hon. Joe Cannon, District Judge of Oklahoma, to whom the cases were assigned, and on April 26, 1982, the Hon. Joe Cannon made certain findings and rulings, the substance of which included the following:

1. Administrator's meeting of March 2, 1982, was illegal for want of the necessary 20 days' notice.

2. Administrator's meeting of April 6, 1982, was illegal for want of proper notice, there being no emergency, rendering actions therein taken void, and directing that a legal meeting be had.

3. There are no valid rules or regulations for holdover tenants, and Administrator must adopt immediate policy to collect holdover rents immediately, or oust the holdover tenants. Administrator is ordered to charge holdover tenants the "fair market value on a monthly basis."

4. Administrator should give serious thought about the old lessees being able to harvest crops and to resolve the conflict between the Constitution, the lease terms and the general state statutes on the subject.

5. The "commodity price of the market variable that's been talked about . . . is absolutely a foreign parity, . . . that is illegal and unconstitutional and in violation of the Supreme Court order . . . and it's struck down by this court."

6. Administrator is ordered to devise a policy which will give adequate notice sufficient to result in a true lease sale.

7. Administrator "must establish a policy on interest rates that has some connection with the real business world and something that most of the big lending institutions do."

8. Administrator must establish a proper policy regarding ownership of improvements on leased land.

9. Administrator is required to lease property out on the fair cash market value of the property.

10. Administrator is ordered to make a study and implement a policy relating to outstanding low-interest loans yielding three to four per cent per annum.

11. Administrator is restrained from permitting lessees to remove improvements from leased premises pending further order of the court.

We do not here pass upon the propriety or correctness of any of said findings and orders of the Oklahoma County District Court, such issues not being before us, and we point them out herein only to show the broad sweep of the issues pending before the Hon. Joe Cannon, to demonstrate that they fall within the orbit of Oklahoma's version of the Uniform Trusts Act which was adopted by the Oklahoma Legislature on May 31, 1941, and to show that all of the issues therein involve the same issues involved in the cases pending in the First Judicial District.

The pertinent part of the Uniform Trusts Act (60 O.S.1981, § 175.23) provides:

"A. The district court shall have original jurisdiction to construe the provisions of any trust instrument; to determine the law applicable thereto; the powers, duties, and liability of trustee; the existence or nonexistence of facts affecting the administration of the trust estate; to require accounting by trustees; to surcharge trustee; and in its discretion to supervise the administration of trusts; and all actions hereunder are declared to be proceedings in rem.

"B. The venue of such actions shall be in the county where the trustees or any cotrustee resides. Upon obtaining jurisdiction the same shall not be divested by the removal of the trustee from the county where such action is commenced.

\*　　\*　　\*　　\*　　\*　　\*

"D. The provisions of the statutes governing civil procedure, commencement of action, process, process by publication, appointment of guardians ad litem, supersedeas and appeal, shall govern all actions and proceedings brought under the provisions of this Act.

"E. A court of competent jurisdiction may, for cause shown and upon notice to the beneficiaries, relieve a trustee from any or all of the duties and restrictions which would otherwise be placed upon him by this Act, or wholly or partly excuse a trustee who has acted honestly and reasonably from liability for violations of the provisions of this Act."

The above-quoted provisions were taken verbatim from the Uniform Trusts Act by the Oklahoma legislature. There is nothing therein which would exclude district court jurisdiction over a trust wherein the United States of America establishes a trust over properties within its jurisdiction and control within the sovereign State of Oklahoma through the State's enabling act, which trust is accepted and activated by the adoption of the State's Constitution which specifically accepts the terms of the trust, thus making it a trust declaration and acceptance between two sovereigns. Nothing in the Oklahoma Constitution appears to confer original jurisdiction of such a trust in the Supreme Court. Art. 7, § 7, Oklahoma Constitution.

■ As we said in *Oklahoma Ed. Ass'n, Inc. v. Nigh, supra,* (235–236):

"The express designation of school lands and funds as a 'sacred trust' has the effect of irrevocably incorporating into the Enabling Act, Oklahoma Constitution, and conditions of the grant all of the rules of law and duties governing the administration of trusts."

■ Since the jurisdiction of the District Court of Oklahoma County has been invoked under the Uniform Trusts Act, supra,

and since venue lies exclusively within Oklahoma County, it follows that all of the cases now pending in the First Judicial District (all of which involve the same issues as in the cases pending in the District Court of Oklahoma County) should be arrested by appropriate order of this Court pending resolution of the matter pending before the Honorable Joe Cannon.

In *State v. Carroll*, Okl., 408 P.2d 550 (1965), a trustee under a will petitioned the Supreme Court to assume original jurisdiction and to issue a writ of prohibition against a judge in Muskogee County from proceeding with a case filed in Muskogee County wherein the interpretation of agreements containing trust provisions was being sought. Plaintiff trustee resided in Tulsa County. Respondent contended that the action in Muskogee County was not one to interpret a trust, but was a suit by a guardian as an adverse claimant to property in the hands of a savings and loan association to which property an alleged trustee was also making a claim and thus did not come under 60 O.S.1981, § 175.23. Therein, this Court held:

"The issue between plaintiff and respondent appears to require an interpretation of the effect of the typed insertion in the trust agreement entered into by the deceased at the time he established the trust account.

"60 O.S.1961, § 175.23, subsections A and B in pertinent part provide as follows:

" 'A. The district court shall have original jurisdiction to construe the provisions of any trust instrument; * *.

" 'B. The venue of such actions shall be in the county where the trustees or any co-trustee resides. * * *.'

"We find that under the applicable law we should assume jurisdiction of this action under authority given by out Constitution. Article VII, Sec. 2.

"We conclude that Tulsa County is the county having venue of the action."

See also *Oklahoma Ordinance Works Authority v. District Court of Wagoner County,* Okl., 613 P.2d 746, 751 (1980) wherein we held that prohibition is a proper remedy to prevent a court from exercising jurisdiction where venue lies in another county.

The case of *Franklin v. Margay Oil Corporation,* 194 Okl. 519, 153 P.2d 486 (1944) is distinguishable. There suit was brought in the District Court of Cleveland County to quiet title to land therein located and incidentally to construe a will and a trust instrument wherein the trustee apparently resided in Oklahoma County. There the Court determined that since all parties had sought affirmative relief in the Cleveland County quiet title suit and did not object to the venue in Cleveland County, they had waived their right to object to the Cleveland County venue of the suit, and the suit being primarily one for quiet title, jurisdiction lay in the county where the land was situated. Since venue may be waived and since the parties entitled to object to the venue waived that right, the Cleveland County District Court had jurisdiction to try the issues.

In the case at bar, no issue that there has been a waiver of venue has been raised.

The Attorney General has argued that if this Court does not act there will be conflicting orders by two or more courts of equal authority upon the same issues and the State of Oklahoma through the Commissioners of the Land Office, trustee, will simply be unable to effectively satisfy its responsibilities. This argument is well taken. Although the mere possibility of such conflicting orders might not, in an ordinary action, be sufficient reason for this Court to intervene, the matter before us now is far from ordinary. This dispute could spawn a multitude of lawsuits in a number of counties. The sovereign State of Oklahoma is a named party in all of the litigation, either as a plaintiff or defendant. The issues of the authority of the trustees to operate as they have in the past has been called in question by this Court's opinion in *Oklahoma Education Ass'n, Inc. v. Nigh, supra.* The exercise of that authority has involved thousands of acres of land situated in several counties. It has involved many millions

of dollars in loans that have been made. A great number of citizens have invested money in the construction of improvements on some of the leased lands in the expectation of being able to continue using them or, at least, of being compensated upon the termination of their leases. Whether these expectations are such as to amount to protectable legal rights is not before us today. We note the existence of such numerous possible controversies because it is apparent that, if this Court fails to act to confine the issues properly determinable under the Uniform Trust Act to that jurisdiction which the legislature has designated as the one having venue, there is a real possibility of the entry of conflicting decrees by two or more courts of equal authority. To avoid this type of difficulty, this Court has in the past prohibited actions which were subsequently brought to resolve the same issues even where venue in the first filed action was not exclusive. *Jones Drilling Co. v. Woodson,* Okl., 509 P.2d 116 (1973); *Southeastern Inc. v. Doty,* Okl., 481 P.2d 144 (1971) and *State v. Lohah,* Okl., 434 P.2d 928 (1967). In the *Lohah* case, on page 934, this Court said:

> "The general rule is that when a court of competent jurisdiction acquires jurisdiction of a subject and of the parties, its jurisdiction continues as to all matters until the issues are finally disposed of, and no other court with coordinant jurisdiction should interfere. This principle is essential to the proper and orderly administration of Justice. (Citations omitted.) Jurisdiction of a court once acquired is not lost or divested by subsequent events. (Citations omitted.)

IT IS THEREFORE ORDERED that until the issues pending before the Honorable Joe Cannon have been judicially resolved all proceedings in the following matters pending before the Respondents are hereby arrested:

*Bill Taggart, et al., v. State of Oklahoma, ex rel. Commissioners of the Land Office In The District Court In And For Texas County, Oklahoma, # C–82–79;*

*C.D. Alexander, et al., v. State of Oklahoma, ex rel. Commissioners of the Land Office, In The District Court In And For Texas County, Oklahoma, # C–82–83;*

*Lee Bowen v. State of Oklahoma, ex rel. Commissioners of the Land Office, In The District Court In And For Beaver County, Oklahoma, # C–82–56;*

*Don E. Adams, et al., v. State of Oklahoma, ex rel. Commissioners of the Land Office, In The District Court In And For Harper County, Oklahoma, # C–82–25;*

*Thomas J. Hinchey, et al., v. State of Oklahoma, ex rel. Commissioners of the Land Office, In The District Court In And For Cimarron County, Oklahoma, # C–82–19;*

*A.W. Allen, et al., v. State of Oklahoma, ex rel. Commissioners of the Land Office, In The District Court In And For Cimmaron County, Oklahoma, # C–82–18;*

*Leland Bardy, et al., v. State of Oklahoma, ex rel. Commissioners of the Land Office, In The District Court In And For Beaver County, Oklahoma, # C–82–49.*

BARNES, V.C.J., and HODGES, OPALA and WILSON, JJ., concur.

SIMMS and HARGRAVE, JJ., dissent.

DOOLIN, J., concurs in part and dissents in part.

IRWIN, C.J., certified his disqualification.

DOOLIN, Justice, concurring and dissenting:

The vice, to which I dissent, and find in the majority opinion lies in the exclusivity of the venue fixed in Oklahoma County, Oklahoma. The majority seems to overlook or downplay the rights of landlord and tenant in existing leases between the State and its tenants as well as rights *Interesse termini.* Venue in such cases last mentioned is in the County where the res or land lies. 12 O.S. 1971, § 131, 1st.

I strongly concur with the majority; that in cases arising over policy matters such as rules, regulations, investments of funds,

amount of rents, distribution of funds, to name but a few, venue lies at the seat and source of the School Land Commission, Oklahoma County, Oklahoma. Likewise, I concur with the majority when it issues its prerogative writ. BUT as to such matters as to rights of occupancy, possession of ground for new crops, termination dates of leases, interest in matured or unmatured grains or products, such as winter wheat or cotton; this is another matter. Likewise grazing land presents still other problems.

Particular, also to the existing leases be they void, voidable or legally binding, is the problem of improvements. The hastily installed electric fence or portable tank presents no problem but the semipermanent or permanent improvement in the matter of buildings, houses, stock servicing devices, wells, etc. presents a problem that becomes an undue burden on the "exclusive jurisdiction" of Oklahoma County. I suggest that the relationship between contesting lessor and lessee is landlord and tenant, not founded solely in trust as implied by the majority.

I am not prepared at this time to apply the doctrine of convenient forum to situations arising outside existing statutory provisions; such a case must await its place on the docket.

### SUPPLEMENTAL ORDER ON REHEARING

On consideration of petition for rehearing and the November 1, 1982 response by the Attorney General, the court finds and directs:

1) The consolidated litigation in Oklahoma County before the Honorable Joe Cannon has been carried to final conclusion by judgment pronounced on October 15, 1982 and memorialized October 29, 1982.

2) There is no longer any tenable legal ground for keeping the cases sought to be prosecuted in the Panhandle counties under the arrest order entered herein by our opinion of July 15, 1982.

The July 15, 1982 order arresting proceedings in the pending cases is therefore dissolved effective this date.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 8th DAY OF NOVEMBER, 1982.

BARNES, V.C.J., and LAVENDER, DOOLIN, OPALA and WILSON, JJ., concur.

SIMMS and HARGRAVE, JJ., concur only in dissolving the arrest order.

HODGES, J., dissents.