1998 OK CIV APP 43
### Martha Gayle "Black" PARSONS, Petitioner,

v.

### OXY USA, INC., National Union Fire Insurance Co., and the Workers' Compensation Court, Respondents.
### No. 89553.

Court of Civil Appeals of Oklahoma, Division No. 2.

Jan. 13, 1998.

Certiorari Denied April 1, 1998.

Nancy Lloyd, Lloyd & Lloyd, Tulsa, for Petitioner.

Richard D. Koljack, Jr., Gable Gotwals Mock, Schwabe Kihle Gaberino, Tulsa, for Respondents.

BOUDREAU, Judge.

¶ 1 Claimant Martha Parsons appeals an order of the workers' compensation court awarding benefits and determining the rate of compensation. The issue on appeal is whether the workers' compensation court erred when it determined Claimant's rate of compensation based on her wage rate in

1987. We find that it did and vacate and remand for further proceedings.

¶ 2 Claimant began working for Employer OXY USA, Inc. in 1979. Her work involved extensive use of a calculator and a computer for data entry and word processing. Claimant testified that, as early as April of 1986, she noticed that her hands got tired when she had to do extended hours of keypunch work. Claimant also testified that, during this time, she sometimes experienced pain in her hands, progressing to her right elbow, which she attributed to her work at the keyboard. However, Claimant did not miss any work due to the numbness and pain. At some point, Claimant saw Dr. Mahaffey, Employer's physician, because of the condition of her hands. Claimant further testified that, in approximately 1995, her hands were getting extremely tired and she was experiencing numbness in her fingers, hands, and wrists. As a result, she saw Dr. Wong on April 16, 1996. Claimant's condition ultimately resulted in surgery.

¶ 3 Claimant filed her claim for workers' compensation benefits in January 1996, asserting that she suffered cumulative trauma injury to her right and left hands and right elbow due to carpal tunnel syndrome. Employer paid temporary total disability benefits to Claimant from May 31, 1996, to March 13, 1997, at the weekly rate of $385. Prior to trial of the claim, Employer filed a Form 10, asserting that it was entitled to credit for overpayment of temporary total disability. Employer asserted both that it had paid temporary total disability benefits for several weeks after Claimant had reached maximum medical improvement and had paid a weekly compensation rate that was too high.

¶ 4 The workers' compensation court tried the issues of (1) permanent disability, (2) rate of compensation for both temporary total and permanent partial disability benefits, and (3) credit to Employer for overpayment of temporary total disability benefits. The court found that Claimant sustained 18% permanent partial disability to her right hand and 14% permanent partial disability to her left hand; however, the court found that Claimant did not sustain injury to her right elbow.

¶ 5 Although the court conducted the trial in May 1997, it based Claimant's rate of compensation on her 1987 earnings, finding that Claimant became aware of her injury in 1987. Therefore, the court set the weekly rate of compensation for temporary total disability at $217, instead of the $385 rate that Employer had paid, and set the weekly rate of compensation for permanent partial disability at $163. The court further found Employer entitled to a credit of $9,492 for overpayment of temporary total disability benefits, because Employer had paid an excessive weekly compensation rate and had paid benefits for too many weeks. Claimant appeals the court's determination of the rate of compensation and its award of a credit for overpayment of temporary total disability benefits.

¶ 6 Claimant argues that the workers' compensation court's finding that she became aware of her injury in 1987 is not supported by competent evidence. Claimant asserts that she became aware of her injury and attributed it to her employment in approximately 1996, when her treating physician diagnosed her carpal tunnel condition. Thus, she argues that her rate of compensation should be based on her wage rate at that time.

¶ 7 The workers' compensation rate for benefits is based on "the average weekly wages of the injured employee *at the time of the injury.*" 85 O.S.Supp.1997 § 21 (emphasis added). The "awareness doctrine" is used in determining "the time of injury" for purposes of computing a claimant's rate of compensation for a cumulative trauma injury. *Rankin v. Ford Motor Co.,* 1996 OK 94, ¶ 9, 925 P.2d 39, 40–41. The date of awareness occurs when a claimant is "possessed of facts which would make a reasonably prudent person similarly situated and of like educational background: (1) aware that he or she has an injury, and (2) aware that the injury is causally related to the working environment." *Coy v. Dover Corp./Norris Div.,* 1989 OK 71, ¶ 11, 773 P.2d 745, 747, *recognized as superseded by statute as to the statute of limitations by Bacon v. McDonnell Douglas,* 1995 OK CIV APP 152, 909 P.2d 1207. "[T]here is an implicit standard of

reasonableness which determines when a claimant's level of awareness, both to the factum and to causation, satisfies the [awareness doctrine] standards." *Id.*

¶ 8 The issue of when a claimant becomes aware of an injury presents a mixed question of law and fact. *Eaton v. Herman Van Noy Drilling,* 1981 OK 152, ¶ 6, 637 P.2d 1249, 1250.

> If the issue under § 43 ... depends upon a question of fact, and the trial tribunal has heard evidence thereon, its findings on that fact issue will not be disturbed on review when based on testimony reasonably tending to establish the factual determination made. As a mixed question of law and fact, and even though the factual determination will not be independently reviewed in this court if reasonably supported by the evidence, application of § 43 so as to bar a claim and thereby determine the issue is a conclusion of law. As a conclusion of law, it is reviewable in this court.

*Munsingwear, Inc. v. Tullis,* 1976 OK 187, ¶ 8, 557 P.2d 899, 902, *recognized as superseded by statute as to the statute of limitations by B.F. Goodrich Co. v. Williams,* 1988 OK 62, 755 P.2d 676.

¶ 9 The issue here revolves around the first prong of the awareness test—when Claimant became aware of her injury. The second prong of the awareness test is not at issue because it is clear from the record that Claimant associated the numbness and pain in her hands with her work at the keyboard.

¶ 10 Our review of various Oklahoma decisions indicates that, in fixing the date of a cumulative trauma injury, a workers' compensation court may consider a multitude of factors, including, but not limited to, the date on which the claimant's condition forces him or her to seek medical treatment, the date on which the claimant's condition worsens to the point where the claimant is no longer able to work, or the date on which the claimant receives specific medical advice about the condition.

¶ 11 In *Esmark/Vickers Petroleum v. McBride,* 1977 OK 189, 570 P.2d 951, the claimant was exposed to loud noises at work. For approximately four to five years he noticed "roaring" in his ears when he would return home after work. Just prior to his retirement, his hearing worsened. Claimant did not seek medical attention for his condition because he thought the condition would abate upon his retirement.

¶ 12 The Oklahoma Supreme Court rejected the employer's argument that the statute of limitations began to run when the claimant first noticed the roaring in his ears. "Any physical inconvenience experienced during work performance, i.e., coughing induced by dust exposure, burning sensation of finger tips or temporary muscular pain induced by exertion or fatigue would require self-diagnosis as to the nature and possible future effects." *Id.* at ¶ 11, 570 P.2d at 953. According to the court, "[a]wareness goes not only to some effect, but also must go to some effect produced by an accidental injury." *Id.* at ¶ 13, 570 P.2d at 954. Although the claimant was aware that the roaring sound in his ears created some hearing difficulty at home, he was not aware he had sustained actual hearing loss until after he retired. Only when the claimant received hearing testing that disclosed hearing loss was he "aware of cumulative effects of work related noise exposure, and this completed awareness of both effect and cause through accidental injury."

¶ 13 The supreme court reached a similar result in *American Airlines, Inc. v. McCombs,* 1976 OK 143, 555 P.2d 1028. In *McCombs,* the claimant's job required him to deliver parts to various areas of his employer's facility. As he made his deliveries, he was exposed to various fumes throughout the facility. For about three years, he noticed that his breathing was affected, and on February 6, 1975, he became sick and did not return to work the next day. On February 11, 1975, he sought medical treatment and was found to have chemical bronchitis, early emphysema, and early pulmonary fibrosis as a result of the dust and fumes at his work. The supreme court rejected the employer's argument that the statute of limitations began to run when the claimant first noticed difficulty with his breathing. According to the court, the awareness required by the awareness doctrine goes not only to "'some

effect,'" but "must go to 'some effect produced by an accidental injury.'" *Id.* at ¶ 5, 555 P.2d at 1030 (quoting *Southwest Factories, Inc. v. Eaton,* 1969 OK 77, 453 P.2d 1021, 1022 (syllabus by the court)). "McCombs' awareness of 'some effect produced by accidental injury' became complete only after February 6, 1975. It was after that episode and the subsequent medical examination he became aware of some effect to his lungs caused by cumulated exposures to fumes at his work." *Id.* at ¶ 7, 555 P.2d at 1030.[1]

¶ 14 Here, the trial court found that Claimant experienced pain in her hands as early as 1987, which she attributed to her work at the computer keyboard. Although Claimant continued to work for approximately eight more years, the trial court found the date of her cumulative trauma injury to be in 1987, and, accordingly, based the rate of compensation on her 1987 earnings. We hold that the trial court erred in doing so. Standing alone, the mere fact that Claimant suffered some pain and numbness while performing her work does not support a determination that she was aware of an "effect produced by an accidental injury." As the supreme court stressed in *Esmark/Vickers,* 1977 OK 189, ¶ 11, 570 P.2d at 953, a claim-

ant cannot be expected to be a diagnostician. Without loss of work time, some medical expense, or specific medical advice, a reasonable person could not reasonably know of a compensable accidental injury.

¶ 15 In *Esmark/Vickers,* the supreme court warned that recognizing "any untoward occurrence without knowledge, or means of knowledge, as to future possible effects would necessitate filing claim for compensation to avoid risk of the bar of the statute [of limitations]." *Id.* While the limitations issue is not a concern today,[2] the reasoning of the supreme court is still valid. Pursuant to the trial court's ruling, Claimant is being compensated at a rate that is approximately 56% of the rate justified by her current earnings because she continued to work for almost an additional eight years after first experiencing symptoms. To avoid a similar result, other claimants would be compelled to file claims for compensation at the first sign of any physical inconvenience experienced at work.[3]

■ ¶ 16 Here, the record does not establish when Claimant first sought medical treatment for her condition which was later diagnosed as carpal tunnel syndrome,[4] when

---

1. See also *Centrilift v. Evans,* 1995 OK CIV APP 159, ¶ 14, 915 P.2d 391, 394 (date of awareness of injury was not date that claimant first noticed problems with her back, but was date when she sought medical treatment and knew that her back problems were related to her work); *Munsingwear, Inc. v. Tullis,* 1976 OK 187, ¶ 16, 557 P.2d 899, 903 (date of injury was not the last day worked but the day that claimant was told by a physician of the ill effect of pulmonary obstructions and restrictions caused by the fumes she breathed at work); *Peabody Galion Corp. v. Workman,* 1982 OK 82, ¶¶ 20–21, 643 P.2d 312, 316 (in hearing loss case, date of injury under awareness test was date that hearing loss was diagnosed, not date that the claimant first noticed hearing problem).

2. In 1985, section 43(A) of the Workers' Compensation Act was amended. Prior to that time, the statute of limitations for a cumulative trauma injury was governed by the awareness doctrine. *Munsingwear, Inc. v. Tullis,* 1976 OK 187, ¶ 13, 557 P.2d 899, 903. Pursuant to the amendment, the statute of limitations for a claim for cumulative trauma injury is now triggered by the last-date-of-exposure. 85 O.S.1991 § 43(A). *B.F. Goodrich v. Williams,* 1988 OK 62, 755 P.2d 676.

3. We also note that other courts have recognized the inequity that can often result when determining the date of injury for purposes of setting the rate of compensation. See *Oscar Mayer & Co. v. Industrial Comm'n,* 176 Ill.App.3d 607, 126 Ill. Dec. 41, 531 N.E.2d 174, 176 (1988) (noting that, if the date of accident were determined to be the date the symptoms first appeared rather than the date the employee is no longer able to work, an employee who has worked for years without interruption and has received regular increases in wages would be unfairly precluded from receiving benefits based on wages earned at the time of the disablement); *In re Worker's Compensation Claim of Nielsen,* 806 P.2d 297, 300 (Wyo.1991) (compensating the claimant in 1988 based on his 1963 earnings would be "a result only one step above no compensation at all," and would violate the rule requiring liberal construction of workers' compensation statutes to effectuate their "beneficent purposes").

4. Claimant testified that she saw Employer's physician for the problems with her hands. However, she could not remember when she saw him. Furthermore, there is nothing in the record from which we can determine when she saw him and what his diagnosis was.

she was first unable to perform her job, or any other factor that might indicate when she became aware that she had suffered a work-related accidental injury.[5] Therefore, we must remand to the workers' compensation court to determine when Claimant's condition manifested itself to such an extent.

¶17 VACATED AND REMANDED FOR FURTHER PROCEEDINGS.

¶18 STUBBLEFIELD, P.J., and RAPP, J., concur.

**5.** The evidence presented at trial on when and why Claimant stopped working is unclear. The parties agreed that Claimant's date of last exposure was April of 1995. At that time, Claimant took time off from work because she had been involved in an automobile accident. It is unclear whether Claimant ever returned to work after the automobile accident. Claimant resigned from her employment in March 1996 as part of a voluntary separation program.