STRIPLING v. DEPT. OF PUBLIC SAFETY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:STRIPLING v. DEPT. OF PUBLIC SAFETY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 STRIPLING v. DEPT. OF PUBLIC SAFETY
2021 OK CIV APP 11
486 P.3d 21
Case Number: 118535
Decided: 09/16/2020
Mandate Issued: 04/07/2021
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2021 OK CIV APP 11, 486 P.3d 21

 

RUSSELL STRIPLING, Petitioner,
v.
DEPARTMENT OF PUBLIC SAFETY, STATE OF OKLAHOMA, and the OKLAHOMA WORKERS' COMPENSATION COMMISSION, Respondents.

PROCEEDING TO REVIEW AN ORDER OF
THE WORKERS' COMPENSATION COMMISSION

MICHAEL T. EGAN, ADMINISTRATIVE LAW JUDGE

VACATED AND REMANDED WITH INSTRUCTIONS

W. E. Sparks, Tulsa, Oklahoma, for Petitioner

Cynthia J. Braly, Jenks, Oklahoma, for Respondents

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Russell Stripling (Claimant) seeks review of an order of the Oklahoma Workers' Compensation Commission affirming a decision of an administrative law judge (ALJ) finding Claimant "has not met his burden of proof in establishing a cumulative trauma injury as alleged." Based on our review, we vacate and remand with instructions.

BACKGROUND

¶2 Claimant, a state trooper with the Oklahoma Highway Patrol since 2006, filed this action in May 2017 asserting he sustained cumulative trauma injuries to his low back and left hip as a result of his employment. Claimant requested temporary total disability from May 5, 2017, to August 27, 2017, as well as permanent partial disability to the low back. The Oklahoma Department of Public Safety (DPS) contested Claimant's claim, and a trial was held on June 26, 2019. Claimant, the only witness to testify at trial, testified he has been a state trooper for thirteen years. He testified that in July of 2016 he noticed that his left "hamstring was tight." He stated: "Just sitting in the patrol unit or going for my jogs for exercise to maintain everything, it would just feel tight, like I had a tight muscle." Claimant continued working, but "finally" went to see his "family doctor, [Brent Hinkle, D.O.]," in the fall of 2016, who provided him with steroid pills. Claimant stated that at this time his "whole left hip was hurting. You know, the left glute was hurting. That was the main concentration of the pain." Claimant testified that it "[got] worse" and in December of 2016 his doctor gave him a steroid injection in his hip. He testified this did not give him any relief.

¶3 At that time, Claimant testified he had an "x-ray on my hip and that was when . . . the person that reads the x-rays saw a problem with the last two disks in my spine." Claimant testified that "was a surprise to [him]" because he did not know he had a problem with his back or spine. An MRI was subsequently performed. The medical records state that the MRI showed "significant disc protrusions in the lumbar spine." The following exchange occurred between Claimant and his counsel: "Q. So when you were told in December it was your back, it was somewhat of a surprise, because you thought it was your hip, did you not, sir? A. It was a shock, yes, sir." Claimant testified, "It was, you know, again, started off right in the hamstring, the feeling on my left leg, and then, you know, right in that left hip."

¶4 Claimant was then referred to Christopher Covington, M.D., who performed a physical examination of Claimant and decided Claimant needed to try several epidural injections in his spine subsequently performed by a Dr. Hardage. One injection was performed in January of 2017, and another the following month, after which Claimant testified his condition did not improve.

¶5 Claimant testified that by this time the pain "had crept up" to his "lower back mainly, but left glute was flexed constantly now and then was not relaxing." He testified that "[s]ometimes" a steady ache went "all the way to my [left] calf." He testified, "Actually, the left glute was the main focus and that's why I always thought it was my hip. It just stayed flexed and in constant pain, and made me limp."

¶6 Claimant responded in the affirmative when questioned whether, because his condition did not improve, he and Dr. Covington decided to go forward with surgery. Surgery was performed in February of 2017. In the medical records, Dr. Covington reports that he

was able to retract the nerve root medially under which was a large herniated disk. The fragment had come out of the annular ring but it was still underneath the ligament. I punched a hole in the ligament and used a right angled hook and fished out a fairly large free fragment. I then entered the disk with a 15 blade in a cruciate fashion and evacuated other disk material that was soft like nuclear material however there was not as much left. He had a broad based disk protrusion that seemed to be chronic and fairly hard and then blew out the little fragment into the left foramen underneath the S1 root to cause the problem. So once I had evacuated the anterior of the disk using various sized curettes and pituitary forceps I explored the epidural space with bulb tip and Wilson and then the intradiscal space with the same. Once I felt a full decompression was obtained and the other nuclear material removed I irrigated thoroughly, placed the Gelfoam soaked thrombin inside the disk space. . . . The patient was returned to the recovery room under satisfactory condition.

¶7 Claimant testified he subsequently underwent physical therapy and, as a result of the successful surgery, returned to his duties as a state trooper in August of 2017 when he was released from Dr. Covington's care.

¶8 Claimant testified that he has performed his duties as a state trooper in a low profile vehicle since 2008. He testified that he wears a "Kevlar vest, and then the Sam Browne belt, which is your weapon, your ASP baton, your handcuffs, a radio, and two extra magazines." He testified that his vest and belt together weigh approximately twelve pounds, and he testified that before he began to have physical difficulties he would, when exiting his patrol car -- which is only eleven inches off the ground -- "throw the left leg out the door, and do, basically, a left-legged squat to get up out of the vehicle and then make my approach." Claimant also testified that he is referred to as an "HCT," a high contact trooper, meaning, "I stay busy" and "stop a lot of cars," and he testified that as part of his job he assists motorists, changes flat tires, has "had foot pursuits, fights. I mean, it runs the full range." Claimant testified that he is now back at work performing his same duties, but that he is "[c]rawling in and out of that vehicle." He testified he does not perform the "left leg squat anymore" when exiting his patrol car and that, instead, "I pivot in my seat and put both feet on the ground and get out on both feet[.]"

¶9 On cross examination, counsel for DPS drew Claimant's attention to the medical report of Gregory L. Wilson, D.O., who opined: "I do not believe the disc herniation at L5-S1 that resulted in surgery was caused by his work." In particular, counsel for DPS drew attention to the fact that in the section of the report entitled "History of Present Illness," it states that Claimant "is a state trooper who in September 2016, was jogging and developed the onset of left lower extremity pain. At first, he felt that this was simply a hamstring problem. It progressively got worse. . . . He does not describe any specific injury at work or event that provoked the symptoms other than the onset of the symptoms after jogging." Claimant testified, "I remember him just examining me," and "[w]e didn't talk much about anything"; instead, "[I] [j]ust told him that I went to the doctor in September [of 2016]."

¶10 Counsel for DPS also highlighted the history sections in Dr. Covington's medical notes, as wells as in the medical notes of Dr. Hardage, which similarly state that Claimant had an onset of pain in September of 2016 after exercising, and counsel for DPS pointed out that Claimant had testified in an earlier deposition that he thought maybe jogging had done something to his hamstring. Claimant explained at trial that "that was the only thing [he] could think of" at the time that would have caused a problem to his hamstring, and the following exchange occurred between counsel for DPS and Claimant:

Q. So it occurred to you to suppose that you had injured yourself jogging, but it did not occur to you to suppose that you had injured yourself at work; is that correct?
A. Well, I thought I injured my leg.
Q. Okay. All right. And as it turned out you didn't have a leg injury, did you?
A. No, ma'am.
Q. You had a back injury.
A. Yes, ma'am.

¶11 Counsel for DPS also questioned Claimant regarding the fact that he initially submitted his medical charges to his private health insurance and did not "report this" to his supervisor because, as stated by counsel for DPS, "you didn't think it was work-related, did you?" To this Claimant responded, "At the time, no, ma'am."

¶12 Claimant submitted the medical report of M. Stephen Wilson, M.D., who stated that in his medical opinion Claimant "sustained a significant injury to his lumbar spine due to his work-related duties." Dr. Stephen Wilson's medical report states: "[Claimant] has worked for the above employer for over 11 years. His job related duties require[] getting in and out of his vehicle on multiple occasions throughout his shift on a daily basis. He was also involved in multiple foot chases as well as takedowns." Dr. Stephen Wilson opined that "the sole and major cause of the significant and identifiable injury and need for treatment to his lumbar spine is directly related to the repetitive work related duties that he was involved in while employed by [DPS]."

¶13 DPS submitted the medical report of William R. Gillock, M.D., who emphasized that "[t]he medical records indicate that [Claimant's] symptoms began after running," and, apparently on this basis, opined that "[t]he sole cause of [Claimant's] condition is not his employment."

¶14 Following the trial, the ALJ entered his order denying compensability, stating, inter alia, that Claimant's

treating medical records do not support the theory of his claim that getting in and out of his vehicle caused his back problems. The record shows that his running was the likely cause of his injury. Further, [Claimant] did not report the injury as work related until after he was released and had the medical services paid other than by workers' compensation.

¶15 On appeal, the Oklahoma Workers' Compensation Commission affirmed, stating the ALJ's "decision was supported by a preponderance of the credible evidence and correctly applied the law and, therefore, was neither against the clear weight of the evidence, nor contrary to law."

¶16 Claimant appeals.

STANDARD OF REVIEW

¶17 Title 85A O.S. Supp. 2019 § 78(C) provides that this Court

may modify, reverse, remand for rehearing, or set aside the judgment or award only if it was:

1. In violation of constitutional provisions;
2. In excess of the statutory authority or jurisdiction of the Commission;
3. Made on unlawful procedure;
4. Affected by other error of law;
5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence;
6. Arbitrary or capricious;
7. Procured by fraud; or
8. Missing findings of fact on issues essential to the decision.

"[W]ith respect to issues of fact, the Commission's order will be affirmed if the record contains substantial evidence in support of the facts upon which it is based and is otherwise free of error." Mullendore v. Mercy Hosp. Ardmore, 2019 OK 11, ¶ 13, 438 P.3d 358 (citation omitted).

ANALYSIS

¶18 Claimant argues the ALJ's order is arbitrary or capricious. Claimant's argument is founded upon sub-arguments that the ALJ's order is affected by errors of law and is not supported by substantial evidence. Claimant first points out that the ALJ relies in his order on the fact that, as quoted above, "[Claimant] did not report the injury as work related until after he was released and had the medical services paid other than by workers' compensation." Claimant quotes the following: "As the [Oklahoma Supreme Court] stressed in [Esmark/Vickers Petroleum v. McBride, 1977 OK 189, ¶ 11, 570 P.2d 951], a claimant cannot be expected to be a diagnostician." Parsons v. OXY USA, Inc., 1998 OK CIV APP 43, ¶ 14, 964 P.2d 913. Similarly, the ALJ found supportive of his denial Claimant's understanding of his condition in 2016, including Claimant's statements to various doctors made prior to his x-ray and MRI when he believed he was suffering from a leg or hamstring injury rather than from sciatica from a degenerative spinal condition. Indeed, DPS acknowledges on appeal that the ALJ "relied on the history provided by [Claimant] himself to the physicians from whom he sought treatment for his back injury."

¶19 It is true Claimant's testimony is clear and uncontroverted that until December of 2016, he was under the impression that he was suffering from a leg or hamstring injury. Claimant testified that "the only thing [he] could think of" at the time that would have caused an injury to his hamstring was his running. However, the record is also clear and uncontroverted that Claimant was in fact suffering from a different injury altogether -- i.e., "[d]egenerative disk disease" in his lumbar spine "with central disk protrusions" and "a free fragment," with "radiculopathy" or sciatica down his left leg.[1] Thus, we agree with Claimant that what was essentially his non-expert self-diagnosis and misinformed belief should not have been relied upon as a basis for denying his claim. Therefore, despite Claimant's misunderstanding finding its way into the history portions of various medical notes and reports found in the record, we conclude this portion of the record fails to provide support for the ALJ's conclusion that the cause of Claimant's injury was his running.

¶20 Claimant also takes issue with other statements in the ALJ's order, including that the "running was the likely cause of his injury." Claimant points out, among other things, that he was the only witness to testify at trial and that he produced detailed photographic and medical evidence consistent with his testimony to support his claim. Claimant essentially asserts that the burden that was placed on him to prove his claim was greater than that contemplated by the applicable statutes. We agree.

¶21 Viewing the ALJ's order as a whole, we conclude the ALJ did not apply a "major cause" test -- indeed, the term major cause is not set forth in the ALJ's order. Instead, the ALJ applied a "sole cause" test to Claimant's claim. Taken literally, under a sole cause test, compensation is only granted where work-related activity is the one and only cause of a cumulative trauma injury. Thus, under such a test, a claimant would need to prove that his injury is caused 100% by work-related activity, and a cumulative trauma injury that is partially caused by any non-work-related activity, however infinitesimally, is not compensable. As we noted in Sequel Youth & Family Services LLC v. Ayisi, 2018 OK CIV APP 7, 412 P.3d 107, such a reading of the Administrative Workers' Compensation Act would lead to "the arbitrary and unreasonable denial of a remedy to a large class of injuries." Id. ¶ 23 n.6. Indeed, following the Ayisi Opinion, the Legislature amended 85A O.S. § 2(9)(a) in 2019 to state, in pertinent part, as follows:

"Compensable injury" means damage or harm to the physical structure of the body, or damage or harm to prosthetic appliances, including eyeglasses, contact lenses, or hearing aids, of which the major cause is either an accident, cumulative trauma or occupational disease arising out of the course and scope of employment.

(Emphasis added). Consistent with the analysis in Ayisi, this amendment clarifies and confirms that it was the Legislature's intent in prior versions of § 2(9)(a) that, pertinent to the present case, a compensable injury means damage or harm to the physical structure of the body of which the major cause is cumulative trauma.[2] Major cause "means more than fifty percent (50%) of the resulting injury, disease or illness." 85A O.S. § 2(27).

¶22 Here, the only medical report in the record to opine on major cause is that of Dr. Stephen Wilson, who stated, in pertinent part, that the "major cause of the significant and identifiable injury and need for treatment to [Claimant's] lumbar spine is directly related to the repetitive work related duties that he was involved in while employed by [DPS]." The medical reports asserting that the sole cause of Claimant's spinal degeneration is his jogging in 2016 rely exclusively on Claimant's above-discussed self-diagnosis and offer no further reasoning. Thus, they are not stated within a reasonable degree of medical certainty and do not constitute substantial evidence. See 85A O.S. Supp. 2013 & 2019 § 2(31)(b) ("Medical opinions addressing compensability . . . shall be stated within a reasonable degree of medical certainty[.]"); Cox Okla. Telecom, LLC v. State ex rel. Okla. Corp. Comm'n, 2007 OK 55, ¶ 36, 164 P.3d 150 (Substantial evidence "possesses a quality of proof inducing a conviction that the evidence furnishe[s] a substantial basis of facts from which the issue could be reasonably resolved," and "[i]n cases before the Commission involving the testimony of expert witnesses, a factual finding is supported by substantial evidence when the evidence is offered by a qualified expert who has a rational basis for his/her views, even if other experts disagree." (footnotes omitted)).

¶23 We conclude the ALJ's order is affected by errors of law and is not supported by substantial evidence. Therefore, we vacate the Commission's order affirming the order of the ALJ, and we remand this case with instructions to find Claimant's claim compensable and to award appropriate benefits.[3]

CONCLUSION

¶24 We vacate the Commission's order affirming the decision of the ALJ finding Claimant "has not met his burden of proof in establishing a cumulative trauma injury as alleged." We remand with instructions to find Claimant's claim compensable and to award appropriate benefits.

¶25 VACATED AND REMANDED WITH INSTRUCTIONS.

RAPP, J., and FISCHER, J., concur.

FOOTNOTES

[1] Dr. Covington's February 2017 surgical report.

[2] Cumulative trauma is defined as "an injury to an employee that is caused by the combined effect of repetitive physical activities extending over a period of time in the course and scope of employment." 85A O.S. § 2(14).

[3] The argument might be made that an exercise routine, if undertaken to stay physically strong and in good condition for one's duties as a law enforcement officer, should, at least under some circumstances, be found to have arisen out of the "course and scope of employment." See 85A O.S. § 2(13); see also Price v. Indus. Claim Appeals Office of State of Colo., 919 P.2d 207, 210 (Colo. 1996) (Some states have adopted a multi-factor test "to determine whether an injury suffered by an employee while engaging in an exercise program is compensable[.]"). Here, however, although Claimant testified at trial that he is required to maintain physical fitness as a state trooper and that he would regularly jog and lift weights for that purpose, Claimant has not pursued the argument, either below or on appeal, that his exercise regimen arose out of the course and scope of his employment.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 
 1996 CO 90, 919 P.2d 207, Price v. Industrial Claim Appeals Office of State of Colo.
Cited
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2018 OK CIV APP 7, 412 P.3d 107, SEQUEL YOUTH & FAMILY SERVICES LLC v. AYISI
Discussed
 1998 OK CIV APP 43, 964 P.2d 913, 69 OBJ 1520, PARSONS v. OXY USA
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 2007 OK 55, 164 P.3d 150, COX OKLAHOMA TELECOM, LLC v. STATE ex rel. OKLAHOMA CORPORATION COMM'N.
Discussed
 1977 OK 189, 570 P.2d 951, ESMARK/VICKERS PETROLEUM v. McBRIDE
Discussed
 2019 OK 11, 438 P.3d 358, MULLENDORE v. MERCY HOSPITAL ARDMORE
Discussed
Title 85A. Workers' Compensation
 Cite
Name
Level

 85A O.S. 2, Definitions
Discussed at Length
 85A O.S. 78, Workers' Compensation Commission - Appeal to Commission - Appeal to Supreme Court
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA