2011 OK CIV APP 110

**AMERICAN RESIDENTIAL COMMU-NITY and Ace American Insurance Company, Petitioners,**

v.

**Levonna CORLEY and the Workers' Compensation Court, Respondents.**

No. 107,965.

Court of Civil Appeals of Oklahoma, Division No. 3.

April 8, 2011.

Rehearing Denied May 25, 2011.

Certiorari Denied Sept. 26, 2011.

Todd Estes, Pierce, Couch, Hendrickson, Baysinger & Green, L.L.P., Oklahoma City, Oklahoma, for Petitioner.

Brian A. Williams, Law Office of Daniel M. Davis, Oklahoma City, Oklahoma, for Respondent.

LARRY JOPLIN, Judge.

¶ 1 Petitioners American Residential Community and Ace American Insurance Company (collectively, Employer) seek review of an order of a three-judge panel of the Workers' Compensation Court reversing the trial court's order and granting permanent partial disability benefits for a soft tissue injury to

the right ankle of Respondent Levonna Corley. In this proceeding, Employer challenges the order of the three-judge panel as contrary to law and unsupported by any competent evidence.

¶ 2 On or about August 31, 2008, Claimant fell at work and sustained injuries to her back, neck, knees and ankles, for which she sought emergency medical treatment at a nearby hospital. According to Claimant, Employer terminated her employment three days later on September 2.

¶ 3 On September 3, Claimant was examined by Dr. Brown, who fitted her with splints for her left knee and right ankle, and referred her to Dr. Edmonds, an orthodpedist. Beginning in February 2009, Dr. Edmonds fitted Claimant with a boot for her right ankle and administered steroid injections to alleviate her continued complaints of right ankle pain. Dr. Edmonds released Claimant from treatment of her right ankle injury July 10, 2009.

¶ 4 The parties appeared with counsel for trial in September 2009. Concerning her right ankle injury, Claimant offered, and the trial court admitted, the medical report of an examining physician, Dr. Rosson, who reported:

> Examination of her right foot/ankle reveals some tenderness to palpation extending along the anterior aspect of the joint as well as along the anterolateral aspect of the ankle and peroneal tendons.
>
> . . . .
>
> [Claimant] has sustained injury to her right ankle and at this time has evidence of persistent and chronic pain with chronic weakness, range of motion abnormalities, chronic tendonitis, and tenosynovitis along with her chondral injury/contusion.
>
> . . . .
>
> In my medical opinion, the major cause of her injuries and ongoing complaints and symptomology is the accident . . . . while employed by [Employer]. She does have objective medical evidence as well as permanent anatomical abnormalities as previously set forth.
>
> . . . .

> [T]his patient has sustained a permanent partial impairment of 20% to the right foot.

Employer offered, and the trial court admitted, the medical report of its examining physician, Dr. Pettigrew, who discerned no permanent partial impairment to the right ankle.

¶ 5 The trial court held Claimant sustained only a soft tissue injury and no permanent partial disability to the right foot/ankle. Claimant appealed. Upon consideration of the record and arguments, a three-judge panel vacated that part of the trial court's order denying PPD benefits for the right ankle injury as contrary to law and the clear weight of the evidence, and held "[C]laimant sustained a ten percent (10%) [PPD] to the RIGHT FOOT for which [C]laimant is entitled to compensation for twenty-two (22) weeks."

¶ 6 Employer now seeks review in this Court. Employer argues that, "[i]n all cases of soft tissue injury, the employee shall only be entitled to appropriate and necessary medical care and temporary total disability . . ., unless there is objective medical evidence of a permanent anatomical abnormality," and that Claimant proved no such permanent anatomical abnormality. 85 O.S. Supp.2007 § 22(3)(d). Alternatively, Employer argues that, if, indeed, Claimant is entitled to PPD benefits for her soft tissue injury, she can recover no more than eight weeks of benefits under § 22(3) for the non-surgical treatment of her soft tissue ankle injury.

¶ 7 Claimant suffered her injury on August 30, 2008. The law in effect at the time of the injury controls, and, notwithstanding the amendment of 85 O.S. § 3.6(C) effective November 1, 2010, we consequently canvass the record for any competent evidence to support the lower court's determination. *Dunlap v. Multiple Injury Trust Fund*, 2011 OK 14, 249 P.3d 951. However, construction of § 22 constitutes a question of law which we review *de novo*, without deference to the lower court's interpretation. *St. John Medical Center v. Bilby*, 2007 OK 37, ¶ 2, 160 P.3d 978, 979.[1]

---

1. "We are presented with a question of statutory    construction. Statutory construction presents a

■ ¶ 8 Relevant to this appeal, § 22(3)(d) provides:

Soft Tissue Injury: In case of a non-surgical soft tissue injury, temporary total compensation shall not exceed eight (8) weeks. A claimant who has been recommended by a treating physician for surgery for a soft tissue injury may petition the Court for one extension of temporary total compensation and the court may order such an extension, not to exceed sixteen (16) additional weeks, if the treating physician indicates that such an extension is appropriate or as agreed to by all parties. In the event the surgery is not performed, the benefits for the extension period shall be terminated. For purposes of this section, "soft tissue injury" means damage to one or more of the tissues that surround bones and joints. "Soft tissue injury" includes, but is not limited to: sprains, strains, contusions, tendonitis, and muscle tears. Cumulative trauma is to be considered a soft tissue injury. "Soft tissue injury" does not include any of the following:

(1) Injury to or disease of the spine, spinal disks, spinal nerves or spinal cord, where corrective surgery is performed;

(2) Brain or closed-head injury as evidenced by:

a. sensory or motor disturbances,

b. communication disturbances,

c. complex integrated disturbances of cerebral function,

d. episodic neurological disorders, or

e. other brain and closed-head injury conditions at least as severe in nature as any condition provided in subdivisions a through d of this division; or

(3) Total knee replacement.

In all cases of soft tissue injury, the employee shall *only* be *entitled to appropriate and necessary medical care and temporary total disability* as set out in paragraph 2 of this section, *unless there is objective medical evidence of a permanent anatomical abnormality.* In determining

the existence of such an abnormality, the Court may consider if there is credible medical evidence that the ability of the employee to earn wages at the same level as before the injury has been permanently impaired.

85 O.S. Supp.2007 § 22(3)(d). (Emphasis added.) Under this section:

.... It is clear that the Legislature intended to limit the period of TTD for certain soft tissue injuries. Section 22(3)(d) limits benefits to eight weeks for non-surgical soft tissue injuries. If surgery is recommended, a claimant may receive court approval for an additional period of up to sixteen weeks in which the surgery may be performed on the soft tissue. Section 22(3)(d) is silent as to the period of time TTD and medical benefits are to be provided when surgery to the soft tissue is performed. Therefore, such an injury is subject to the limits imposed generally on TTD found at section 22(2)(c) which permit a maximum of 156 weeks of TTD and medical benefits and up to 300 weeks for good cause shown.

Section 22(3)(d) also contains an exclusion from the definition of "soft tissue injury." That section provides: " 'Soft tissue injury' does not include any of the following: (1) Injury to or disease of the spine, spinal disks, spinal nerves or spinal cord, where corrective surgery is performed." Id. (emphasis added). Thus, "where corrective surgery is performed" to the "spine, spinal disks, spinal nerves or spinal cord," the injury is by definition not a "soft tissue injury" and it is not subject to the TTD time limits of section 22(3)(d). Rather, it is controlled by the time limits stated in section 22(2)(c).

*Bed Bath & Beyond, Inc. v. Bonat,* 2008 OK 47, ¶¶ 12–13, 186 P.3d 952, 955. So, under § 22(3)(d):

1. For non-surgical soft tissue injuries, § 22(3)(d) limits benefits to eight weeks of TTD.

2. "If surgery is recommended, a claimant may receive court approval for an

question of law which is subject to de novo review. Such review is plenary, independent,

and non-deferential." (Citations omitted.)

additional period of up to sixteen weeks in which the surgery may be performed on the soft tissue," or twenty-four weeks of TTD all together.

3. "[W]hen surgery to the soft tissue is performed[,] ... such an injury is subject to the limits imposed generally on TTD found at section 22(2)(c) which permit a maximum of 156 weeks of TTD and medical benefits and up to 300 weeks for good cause shown." This is especially true in a case "where corrective surgery is performed" to the "spine, spinal disks, spinal nerves or spinal cord," because such an "injury is by definition [under § 22(3)(d) ] not a 'soft tissue injury' and it is not subject to the TTD time limits of section 22(3)(d)."

*Bonat*, 2008 OK 47, ¶¶ 12–13, 186 P.3d at 955.

■ ¶ 9 That said, the present case requires us to first determine whether § 22(3)(d) permits *any* award of permanent partial disability in a soft tissue injury case. In this respect, § 22(3)(d) clearly limits an award for a soft tissue injury to necessary medical treatment and no more than twenty-four weeks of TTD *"unless* there is objective medical evidence of a permanent anatomical abnormality." By use of the word, "unless," the Legislature has expressly created an exception to the TTD-only proscription. So, if a claimant presents "objective" and "credible" medical evidence that, as a consequence of the soft tissue injury, the claimant now suffers from some permanent anatomical abnormality and impairment, § 22(3)(d) authorizes an award of PPD.

¶ 10 Having so recognized, we must next determine the meaning of the phrase, "permanent anatomical abnormality," as used in § 22(3)(d). We are bound to affect our Legislature's plainly-expressed intent and to read all relevant sections as a harmonious whole. *See, e.g., Tyler v. Shelter Mut. Ins. Co.*, 2008 OK 9, ¶ 12, 184 P.3d 496, 499–500.

¶ 11 We first note that the phrase, "permanent impairment," "means *any anatomical abnormality* after maximum medical improvement has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the

rating is made," and "any examining physician shall only evaluate impairment in accordance with the latest publication of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment' in effect at the time of the injury...." 85 O.S. Supp.2006 § 3(19). (Emphasis added.) We secondly note that a "permanent anatomical abnormality" must be demonstrated by "credible" and "objective medical evidence," which is "evidence which meets the criteria of Federal Rule of Evidence 702 and all U.S. Supreme Court case law applicable thereto." 85 O.S. Supp.2008 § 3(17). And third, as more succinctly stated in the Rules of the Workers' Compensation Court:

> Medical opinions concerning the existence or extent of permanent impairment must be supported by objective medical evidence of permanent anatomical abnormality, and, in appropriate cases, may include medical evidence that the ability of the employee to earn wages at the same level as before the injury has been permanently impaired. Medical opinions supporting employment as the major cause of occupational disease or age-related deterioration or degeneration, must be supported by objective medical evidence. "Objective medical evidence" includes medical testimony that rests on reliable scientific, technical or specialized knowledge, and assists the Court to understand the evidence or to determine a fact in issue.

Rule 20(c), Rules of the Workers' Compensation Court, 85 O.S. Supp.2006, ch. 4, app.

■ ¶ 12 Reading these provisions together, it would appear that the phrase, "permanent anatomical abnormality," means any anatomical abnormality capable of rating as a permanent impairment under the AMA Guides. And, both § 22(3)(d) and Rule 20 permit consideration of the extent to which claimant's earning capacity has been impaired in making the determination of whether a "permanent anatomical abnormality" exists.

¶ 13 Having so held, we observe that Dr. Rosson reported a loss of range of motion in the right ankle, and stated that he rated that loss of motion according to the AMA Guides.

Because the loss of range of motion constitutes a ratable permanent impairment under the AMA Guides, Dr. Rosson's report constitutes competent, objective medical evidence of the existence of a permanent anatomical abnormality resulting from the soft tissue injury to Claimant's right ankle.

¶ 14 Finding competent evidence to support the order of the three-judge panel awarding benefits for PPD to Claimant's right ankle, the order of the three-judge panel is SUSTAINED.

MITCHELL, P.J., and BUETTNER, J., concur.