2013 OK CIV APP 26

**1ST STAFFING GROUP USA and CompSource Oklahoma, Petitioners,**

v.

**Brandy BRAWLEY and the Workers' Compensation Court, Respondents.**

No. 110,340.

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 14, 2013.

James L. Gaston, Jr., Donald A. Bullard, Bullard & Associates, Oklahoma City, Oklahoma, for Petitioners.

Richard A. Bell, Heather A. Lehman, The Bell Law Firm, Norman, Oklahoma, for Respondents.

JANE P. WISEMAN, Judge.

¶ 1 1st Staffing Group USA (Employer) seeks review of orders of the Workers' Compensation Court determining compensability, awarding permanent partial disability (PPD) benefits, and denying Employer's request for overpayment of temporary total disability (TTD) benefits. Upon review of the record on appeal and applicable law, we vacate the order of the trial court that denied Employer's request for overpayment of TTD benefits and remand for further proceedings on this issue alone. We sustain the award of PPD benefits to Claimant.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Claimant filed a Form 3 on September 30, 2009, alleging injury to her low back, left hip, left knee, body, and also depression arising from an accident at work. Claimant stated she "slipped on fluid" on or about July 6, 2009. Employer admitted the back and left knee injury but denied "left hip, body or depression." Employer also alleged Claimant had a pre-existing condition and denied PPD and permanent anatomical abnormality. Employer asserted Claimant had a "soft-tissue injury only."

¶ 3 Employer later asked for a TTD overpayment credit after it had paid Claimant 24 weeks of TTD benefits. On May 17, 2011, Employer filed a supplemental Form 10 in which it again denied PPD, denied permanent anatomical abnormality to the thoracic

or lumbar back and left leg and psychological overlay, claimed that Claimant had a preexisting condition, and asked for apportionment.

¶ 4 A trial was held on May 19, 2011. Employer requested an overpayment credit for payments made from June 8, 2010, through November 30, 2010, for a total of $7,763.50 "based on the fact that in excess of 24 weeks TTD had been paid without the Claimant undergoing any surgery to any body part." Counsel for Claimant stated:

[I]n response to the request for overpayment, I would just like to state, on the Claimant's behalf, that the MRI scan in this case did show three unoperated disk lesions resulting, in our opinion, in permanent anatomical abnormality and loss of function, and that's outlined in our report which we have submitted to you; and she's also undergone an epidural steroid injection.

Employer's counsel stated in response:

[W]e don't believe the bulges that are documented in the first MRI, number 1, may even be there.

When Dr. Livingston was appointed, he had to run a second MRI to the low back, which was reported as normal. He turned around and said that there aren't. So, he personally reviewed both MRIs and made the finding in a report, March 23rd, 2010, that he personally reviewed both of them, and that the bulges, in his opinion, were not acute, in the one that was documented; and therefore, we don't believe there is any permanent anatomical abnormality.

¶ 5 Claimant testified that she was walking back from break at work on July 6, 2009, when she slipped on some hydraulic fluid and fell. She stated that the fall resulted in injuries to her back and left knee and that she also has pain in her left hip. She was evaluated at Sisters of Mercy Health System by Charles Holmes, PAC. X-rays were taken of her back and she was provided with muscle relaxers and anti-inflammatory medication. She was referred for a course of physical therapy and placed on light duty work restrictions. An MRI scan was performed and Claimant was evaluated by Dr. Michael Kiehn, who placed her on a Medrol Dosepak and recommended aggressive physical therapy. Claimant testified the aggressive physical therapy aggravated her symptoms resulting in Dr. Kiehn adjusting his instructions for physical therapy. Dr. Kiehn also administered a steroid injection in her left knee.

¶ 6 Claimant was also seen by Dr. Patrick Livingston. Another MRI was performed on her low back. Dr. Stephen Andrade gave Claimant an epidural steroid injection. Dr. Christopher Bouvette performed an EMG study and recommended pain management, but Claimant testified she never received pain management. Claimant received a Functional Capacity Evaluation on December 16, 2010, and was placed "in a sedentary physical demand category with occasional maximum of 10 pounds." Claimant has been unable to return to work with these restrictions and asked the court for a vocational retraining evaluation.

¶ 7 Claimant denied any previous problems with her left knee or low back or injuries to these body parts prior to her accident at work. She stated that she has sharp pains across her back and down her left side that go through her hip to her knee and that her knee throbs once or twice a day for approximately 15 to 20 minutes. She testified that she has pain every day, the pain causes her not to sleep, and she is unable to attend her kids' functions or do house chores. She says she has symptoms of depression, including sadness.

¶ 8 On cross-examination, Claimant testified she never filed a prior workers' compensation claim. She stated she has increased pain with certain activities and she has difficulty sleeping. She has received no treatment for depression.

¶ 9 The trial court admitted the report of M. Stephen Wilson, M.D., who stated that the report from the MRI performed on August 3, 2009, "revealed disc bulging at L2/3, with posterior element hypertrophy and narrowing of the right foramen. At L3/4 and L4/5, there were broad-based disc bulges present with foraminal involvement and posterior element hypertrophy with bilateral for-

aminal narrowing." The report also stated the following:

Per court order, [Claimant] was then evaluated by Dr. Patrick Livingston March 23, 2010. Dr. Livingston noted continued symptoms in her low back, however, it was noted that her left knee had improved considerably. Dr. Livingston recommended a repeat MRI scan of her low back. This was performed on March 29, 2010, at Southwest Oklahoma MRI. This revealed a normal MRI of the lumbar spine.

Dr. Livingston then noted upon review of the MRI scan that it was surprisingly read as normal. He did not understand why there was such a discrepancy from the first MRI scan performed in August 2009, which revealed multiple disc bulging. Due to this discrepancy, he requested the actual scans for personal review. He did recommend that she undergo epidural steroid injections.

Following review of the actual MRI scans, Dr. Livingston noted some disc bulging at L4/5 and left L4/5 neuroforaminal narrowing. He continued to believe that she would benefit from epidural steroid injections. He discussed possible referral for a lumbar discogram should her symptoms not improve.

Dr. Wilson performed range of motion tests for the lumbar spine and concluded that Claimant had 5% impairment for range of motion of both the lumbar flexion and lumbar extension, 3% for the left lateral flexion, 2% for the right lateral flexion, 6% for weakness in the lumbar flexors and extensors, 8% for weakness in the bilateral hip flexors and extensors, 9% for weakness and neuropathy for the bilateral lower extremities, and 9% for the three unoperated disc lesions at L2/3, L3/4, and L4/5. Dr. Wilson found a total lumbar impairment of 49%.

¶ 10 Dr. Wilson stated Claimant scored a 74 on the Goldberg Depression test. Dr. Wilson concluded Claimant's score is consistent with severe depression.

¶ 11 Dr. Wilson concluded that Claimant sustained a 49% whole person permanent partial impairment to her lumbar spine, 17% permanent partial impairment to her left leg/ knee, and 24% whole person permanent partial impairment due to depression. Dr. Wilson stated, "It is my opinion that [Claimant] should be considered a surgical candidate while undergoing the epidural steroid injections" because of the invasive nature of the procedure and the fact that the procedure is performed in a surgical suite.

¶ 12 The trial court admitted the report of LeRoy E. Young, D.O., which stated that in his opinion, Claimant has sustained no permanent partial impairment or permanent anatomical abnormality to the spine, left leg, or for psychological overlay. Dr. Young stated that the "the major cause of [Claimant's] current complaints to her lumbar spine and left leg is the accident on July 6, 2009." However, he concluded that the major cause of Claimant's "current psychological complaints is not the accident on July 6, 2009." He also concluded that Claimant's period of TTD has long since ended, she may return to work, and she is in no further need of medical care or vocational rehabilitation.

¶ 13 The trial court found that Claimant sustained an accidental personal injury on July 6, 2009, to her lumbar spine, left leg (knee), and consequential psychological overlay that arose out of and in the course of her employment with Employer. The court denied Claimant's request for TTD benefits from December 1, 2010, through December 16, 2010, and Employer's request for overpayment of TTD benefits from June 8, 2010, through November 30, 2010. The court found that as a result of injury, Claimant suffered 20% PPD to the whole man lumbar spine due to 3 level disc abnormalities. The court found that the residual pain, weakness, and range of motion deficits, as well as the disc abnormalities are anatomical abnormalities. The court found 10% PPD to the whole man due to psychological overlay, over and above a 5% pre-existing disability, and 10% PPD to the left leg (knee). The court concluded Claimant is entitled to compensation for 177.5 weeks at $310.54 per week, of which 23 weeks have accrued. The court also ordered Employer or its insurance carrier to provide Claimant with a Vocational Rehabilitation Evaluation.

¶ 14 Employer requested review of the trial court's decision by a three-judge panel. Employer claimed the trial court's decision that Claimant has three-levels of disc abnormalities is contrary to law and against the clear weight of the evidence. Employer also argued the trial court incorrectly concluded that it was not entitled to a TTD overpayment credit after 24 weeks of TTD had been paid. Employer also asserted that the trial court's decision regarding impairment to the left knee and psychological overlay are contrary to law and against the clear weight of the evidence.

¶ 15 The three-judge panel vacated the portion of the trial court's order that denied Employer's request for overpayment and remanded "for a determination of the over/under payment issue based on case law." On remand, the trial court again denied Employer's request for overpayment.

¶ 16 Employer appeals.

## STANDARD OF REVIEW

¶ 17 "The standard of review applicable to a workers' compensation appeal is that which is in effect when the claim accrues." *Williams Cos. Inc. v. Dunkelgod,* 2012 OK 96, ¶ 18, 295 P.3d 1107 (not yet released for publication). The applicable standard of review "is determined as of the date of injury and is a substantive right which remains unaffected by later-enacted legislation, despite statutory language to the contrary." *Id.* Claimant was injured on or about July 6, 2009.

Before the 2010 statutory amendment to 85 O.S. § 3.6(C), discussed below, or the enactment of the new Workers' Compensation Code (the Code), 85 O.S.2011, §§ 301–413 on August 26, 2011, *Parks v. Norman Municipal Hosp.,* 1984 OK 53, 684 P.2d 548, was the landmark case addressing the standard of review in workers' compensation appeals. Appellate court review was limited to questions of law. 85 O.S.1981 § 26. Final orders of the Workers' Compensation Court were subject to the traditional "any-competent-evidence test of correctness."

*Id.* at ¶ 7, [295] P.3d at [1110] (footnotes omitted). This any-competent-evidence standard of review applies to this appeal. *See id.*

¶ 18 Under this standard, Appellate courts are "bound by the factual findings of the trial tribunal if supported by competent evidence. Only in the absence of such support will the compensation court's decision be viewed as erroneous as a matter of law and subject to appellate vacation." *Garrison v. Bechtel Corp.,* 1995 OK 2, n. 6, 889 P.2d 273.

## ANALYSIS

¶ 19 Employer sets forth four propositions of error in its brief in chief. Employer asserts that the following decisions of the trial court are against the clear weight of the evidence and are erroneous as a matter of law: (1) the award of PPD for the low back and the court's failure to apportion PPD for the low back, (2) the award of PPD for the left knee, (3) the award of PPD and the failure to apportion PPD for psychological overlay, and (4) the denial of Employer's request for TTD overpayment credit.

¶ 20 In her answer brief, Claimant asserts the PPD awards for her back and knee and psychological overlay have not been timely appealed. She asserts that the ruling on these issues "became final in regards to all issues not remanded for rehearing twenty (20) days after October 20, 2011," the date of filing of the order in which the three-judge panel affirmed the trial court's order in part, vacated the order in part, and remanded for further proceedings.

¶ 21 We reject Claimant's argument that we are unable to review the issues before the three-judge panel that were not subject to remand. A reviewable order decision in a workers' compensation case is "one which 'makes or denies an award' or otherwise constitutes 'a final determination of the rights of the parties.'" *Hermetics Switch, Inc. v. Sales,* 1982 OK 12, ¶ 3, 640 P.2d 963, 965 (quoting *McCallum & Forber v. Owens,* 1938 OK 642, ¶ 2, 184 Okla. 66, 85 P.2d 411, 411). "An en banc order vacating the trial judge's decision and remanding the claim for further proceedings does not fall under the rubric of reviewable decisions." *Id.; see also*

*In re Death of Strunk,* 1991 OK CIV APP 130, ¶ 5, 822 P.2d 1140, 1141 ("Because the matter here was remanded to the trial court 'to conduct further hearings,' the three judge panel's order could not constitute a 'final determination of the rights of the parties.' "). "A party can seek corrective relief from properly preserved claims of error made by the panel by way of a petition for review timely brought 'from the next disposition in the case which is reviewable by law.' " *D & P Tank Trucks, Inc. v. Rogers,* 2008 OK CIV APP 21, n. 1, 178 P.3d 179 (quoting *Hermetics,* 1982 OK 12 at ¶ 7, 640 P.2d at 966).

¶ 22 In this case, the next disposition was the trial court's order on remand from the panel that was filed January 13, 2012. Employer filed its petition for review on February 2, 2012, which is within the twenty-day time period to file an appeal from a decision of the Workers' Compensation Court as required by Oklahoma Supreme Court Rule 1.100, 12 O.S.2011, ch. 15, app. 1.

■ ¶ 23 Employer first asserts the trial court's order awarding PPD for the injury to Claimant's lower back is against the clear weight of the evidence. However, as discussed above, we must review the order of the Workers' Compensation Court under the any-competent-evidence standard of review. *See Dunkelgod,* 2012 OK 96 at ¶ 7, 295 P.3d at 1110.

¶ 24 Employer notes that the first MRI shows only minimal findings at three levels and the second MRI was normal. Employer further asserts the MRI was not objective medical evidence of three disc abnormalities. However, in addition to the MRI findings regarding the disc abnormalities, Claimant submitted the report of Dr. Wilson, who performed range of motion tests for the lumbar spine and concluded that Claimant had impairment due to loss of range of motion. In his report, Dr. Wilson stated his "examination and opinions are in compliance with the *American Medical Association Guides to the Evaluation of Permanent Impairment, Fifth Edition,* except for scheduled members and impairment not covered by the *Guides.*"

¶ 25 In *American Residential Community v. Corley,* 2011 OK CIV APP 110, 264 P.3d

131, another division of this Court examined whether a claimant was entitled to an award of PPD benefits for a soft tissue injury. The Court stated:

[T]he phrase, "permanent impairment," "means *any anatomical abnormality* after maximum medical improvement has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made," and "any examining physician shall only evaluate impairment in accordance with the latest publication of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment' in effect at the time of the injury."

*Id.* at ¶ 11, 264 P.3d at 134 (quoting 85 O.S. Supp.2006 § 3(19)). The court further noted that a "permanent anatomical abnormality" is required to "be demonstrated by 'credible' and 'objective medical evidence,' which is 'evidence which meets the criteria of Federal Rule of Evidence 702 and all U.S. Supreme Court case law applicable thereto.' " *Id.* (quoting 85 O.S. Supp.2008 § 3(17)).

¶ 26 The Rules of the Workers' Compensation Court provided the following at the time the *Corley* case was decided:

Medical opinions concerning the existence or extent of permanent impairment must be supported by objective medical evidence of permanent anatomical abnormality, and, in appropriate cases, may include medical evidence that the ability of the employee to earn wages at the same level as before the injury has been permanently impaired. Medical opinions supporting employment as the major cause of occupational disease or age-related deterioration or degeneration, must be supported by objective medical evidence. "Objective medical evidence" includes medical testimony that rests on reliable scientific, technical or specialized knowledge, and assists the Court to understand the evidence or to determine a fact in issue.

Rule 20(c), Rules of the Workers' Compensation Court, 85 O.S. Supp.2006, ch. 4, app.[1]

*Id.*

¶ 27 The *Corley* Court concluded:

**1.** The Rule in effect at the time of Claimant's    injury similarly provided:

Reading these provisions together, it would appear that the phrase, "permanent anatomical abnormality," means any anatomical abnormality capable of rating as a permanent impairment under the AMA Guides. And, both § 22(3)(d) and Rule 20 permit consideration of the extent to which claimant's earning capacity has been impaired in making the determination of whether a "permanent anatomical abnormality" exists.

*Id.* at ¶ 12, 264 P.3d at 134. The Court stated:

Having so held, we observe that Dr. Rosson reported a loss of range of motion in the right ankle, and stated that he rated that loss of motion according to the AMA Guides. *Because the loss of range of motion constitutes a ratable permanent impairment under the AMA Guides, Dr. Rosson's report constitutes competent, objective medical evidence of the existence of a permanent anatomical abnormality resulting from the soft tissue injury to Claimant's right ankle.*

*Id.* at ¶ 13, 264 P.3d at 134–35 (emphasis added).

¶ 28 Although the holding in *Corley* is not binding, we find its reasoning to be persuasive. Even if there is no MRI finding of anatomical change, Dr. Wilson's conclusion regarding impairment due to loss of range of motion supports the trial court's finding of PPD. The fact that the reports of Dr. Wilson and Dr. Young differ does not lead to a different result. In 2007, the Supreme Court concluded

that medical opinions formulated under the AMA Guidelines and the workers' compensation law would comply with "Federal Rule of Evidence 702 and all U.S. Supreme Court case law applicable thereto;" that those opinions may vary even though they are based upon the same medical records,

history and tests; and that physicians could have admissible opinions with varying probative value before and after the 2005 amendments.

*Conaghan v. Riverfield Country Day Sch.,* 2007 OK 60, ¶ 17, 163 P.3d 557, 563.

¶ 29 Even if we were to accept Employer's argument that the MRI results do not support the trial court's conclusion that there was an injury to Claimant's back and disc abnormalities, Dr. Wilson's report contains competent evidence to support the trial court's award of PPD benefits for Claimant's back injury. One may disagree with Dr. Wilson's conclusion when contrasted with Dr. Young's, but this determination requires weighing the evidence, which is purely within the province of the trial court, and its decision on this issue will not be disturbed on appeal unless there is no competent evidence on which to base it.

¶ 30 Although Employer asserts that there is no objective medical evidence of an anatomical abnormality, Employer does not take into account that these range of motion tests were performed. Dr. Wilson based his medical opinion in part on the results of the tests, as evidenced by the fact that Dr. Wilson gave the opinion that Claimant's permanent disability was based, at least in part, on her loss of range of motion.

¶ 31 These same conclusions apply to the trial court's decision regarding the left knee. Dr. Wilson specifically attributed Claimant's permanent partial impairment to her loss of range of motion and indicated that this resulted in a permanent anatomical abnormality.

¶ 32 Dr. Wilson also relied on the *Guides* to rate Claimant's consequential development of depression. Dr. Wilson stated that a Goldberg Depression test was administered to Claimant in his office and that her

C. Medical opinions concerning the existence or extent of permanent impairment must be supported by objective medical evidence of permanent anatomical abnormality, and, in appropriate cases, may include medical evidence that the ability of the employee to earn wages at the same level as before the injury has been permanently impaired. Medical opinions supporting employment as the major cause of oc-

cupational disease or age-related deterioration or degeneration, must be supported by objective medical evidence. "Objective medical evidence" includes medical testimony that rests on reliable scientific, technical or specialized knowledge, and assists the Court to understand the evidence or to determine a fact in issue. Rule 20(c), Rules of the Workers' Compensation Court, 85 O.S. Supp.2008, ch. 4, app.

score was consistent with severe depression. He stated that his opinion "is due to objective medical findings demonstrating symptoms of depression, which results in moderate limitation of activities of daily living and daily social interpersonal functioning." He attributed the depression to Claimant's work and stated that the 24% whole body impairment is over and above any prior injury.

¶ 33 We conclude that Dr. Wilson's report constitutes ·competent evidence to support the trial court's finding of PPD due to psychological overlay. Dr. Wilson administered a depression assessment, consulted with Claimant, and then used the *Guides* to rate her impairment. In *Urology Center of Southern Oklahoma v. Miller*, 2010 OK CIV APP 137, 246 P.3d 736, another division of this Court found that an award of psychological overlay was supported by the evidence where the expert administered a "Zung Depression Test." *Id.* at ¶¶ 45–47, 246 P.3d at 743; *see also Adecco Inc. v. Dollar*, 2011 OK CIV APP 43, 254 P.3d 729 (upheld award of PPD due to psychological overlay where a chiropractor based his determination of permanent partial impairment on consultation with the claimant, results of the Zung test, and the claimant's medical records).

¶ 34 Finally, Employer asserts that the trial court erred in refusing its request for an overpayment credit for payment of TTD. The trial court initially denied Employer's request for an overpayment request for TTD. The three-judge panel vacated this portion of the trial court's order and remanded the case "for a determination of the over/under payment issue based on case law." On remand, the trial court stated the following: "THAT after review, the trial Court still denies [Employer's] request for overpayment of temporary total disability. Temporary total disability status must be based on competent medical evidence. [Employer's] medical expert does not opine the period of [C]laimant's temporary total disability."

¶ 35 On appeal, Employer asserts the trial court erred in denying the request because Claimant was limited to 24 weeks of TTD benefits because she had a soft tissue injury. Title 85 O.S. Supp.2008 § 22, the statute in effect at the time of Claimant's injury, provided:

In case of a nonsurgical soft tissue injury, *temporary total compensation shall not exceed eight (8) weeks.* A claimant who *has been recommended by a treating physician for surgery* for a soft tissue injury may petition the Court for *one extension of temporary total compensation and the court may order such an extension, not to exceed sixteen (16) additional weeks,* if the treating physician indicates that such an extension is appropriate or as agreed to by all parties. In the event the surgery is not performed, the benefits for the extension period shall be terminated. For purposes of this section, "soft tissue injury" means damage to one or more of the tissues that surround bones and joints. "Soft tissue injury" includes, but is not limited to: sprains, strains, contusions, tendonitis, and muscle tears. Cumulative trauma is to be considered a soft tissue injury. "Soft tissue injury" does not include any of the following:

(1) Injury to or disease of the spine, spinal disks, spinal nerves or spinal cord, where corrective surgery is performed....

In all cases of soft tissue injury, the employee shall only be entitled to appropriate and necessary medical care and temporary total disability as set out in paragraph 2 of this section, unless there is objective medical evidence of a permanent anatomical abnormality. In determining the existence of such an abnormality, the Court may consider if there is credible medical evidence that the ability of the employee to earn wages at the same level as before the injury has been permanently impaired.

Employer sought a credit for overpayment of TTD in excess of 24 weeks or from the requested time period of June 8, 2010, to November 30, 2010.

¶ 36 "Meaningful review is facilitated by an order from the trial tribunal from which the specific basis for its decision to grant or deny a claim can be determined. This requirement is not a mere technicality." *Dunkin v. Instaff Pers.*, 2007 OK 51, ¶ 15, 164 P.3d 1057, 1061. We conclude that the

trial court's order does not provide a basis for review as to why it denied the request for overpayment of TTD benefits, where the statute specifically limits the amount of TTD benefits that may be awarded in a case involving a soft tissue injury. Although the trial court states a reason for denial, that reason alone, without further findings, renders this Court unable to conduct a meaningful review of that decision.

¶ 37 If Claimant's injuries are soft tissue injuries, she was entitled to a maximum of 24 weeks of TTD benefits, unless she had surgery, which she did not. The statute does not make the limitation on the number of weeks of TTD dependent on Employer's medical expert offering an opinion on Claimant's period of TTD. It is statutorily set at a maximum of 24 weeks. It may be that the trial court concluded that Claimant's injuries were not soft tissue injuries and that Employer was therefore required to present expert opinion on the length of TTD. Because this is not clear, we must remand the matter to the trial court. If the trial court's conclusion is that Claimant's injury is not a soft tissue injury, and the 24–week TTD limit therefore does not apply, then that determination must be made clear in its order. If the Claimant's injury is in fact a soft tissue injury, then the trial court must grant Employer's request for overpayment of TTD benefits in excess of 24 weeks.

## CONCLUSION

¶ 38 The decision of the Workers' Compensation Court awarding Claimant PPD benefits is sustained. The decision of the trial court denying Employer's request for credit for overpayment of TTD benefits is vacated. On remand, the trial court shall reconsider the issue of credit for overpayment of TTD benefits in accordance with this Opinion.

¶ 39 **SUSTAINED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, V.C.J., and RAPP, J., (sitting by designation) concur.