2015 OK CIV APP 94

**ROBISON MEDICAL RESOURCE GROUP and Castlepoint National Insurance Company, Petitioners,**

v.

**Tommy Ray TRUE and The Workers' Compensation Commission, Respondents.**

**No. 113,528.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 4, 2015.

Robert P. Powell, Katie Sommer, Pierce Couch Hendrickson Baysinger & Green, L.L.P., Oklahoma City, Oklahoma, for Petitioners.

John L. Harlan, John L. Harlan & Associates, P.C., Sapulpa, Oklahoma, for Respondent.

DEBORAH B. BARNES, Judge.

¶1 Petitioners Robison Medical Resource Group (Employer) and CastlePoint National Insurance Company (collectively, Petitioners) seek review of an order of the Workers' Compensation Commission en banc affirming an order of an Administrative Law Judge (ALJ). The ALJ found the injuries sustained by Respondent Tommy Ray True (Claimant), resulting from an automobile accident, arose out of the "course and scope" of his employment and were compensable. The

Commission affirmed the ALJ's order. Based on our review, we sustain.

## BACKGROUND

¶2 Employer is a staffing company that staffs and contracts with hospitals to supply nursing and nursing support staff. Claimant, a registered nurse, began working for Employer in May 2013 as a "per diem nurse," meaning he would work for an agreed number of hours, and at a specified hourly rate, at various hospitals throughout Northeastern Oklahoma for which Employer supplied nursing staff. For example, Claimant testified that, before working at a certain hospital, he would "talk to a staffing person" for Employer, and "[t]hey tell you, you know, if you want to go to Claremore, this is the rate that we are paying at Claremore right now." He stated: "You deal with the staffing person. If they call you right then, they have the ability to offer you a rate...."

¶3 Claimant stated that most of his work was performed at hospitals in Claremore, Pryor, and in Mayes County, but that he sometimes also worked at a more distant hospital located in Grove, Oklahoma, because Employer "[is] the primary supplier for that hospital[.]" He stated that he was compensated for his mileage when he worked at the Grove hospital because it was a considerably longer drive compared to his drive to the other hospitals. He testified: "The only place I've ever been paid mileage is going to Grove." Claimant also testified that "Grove is farther away, so it's much easier to get somebody to replace like my shift that was at Claremore than it would be to get somebody to go all the way to Grove."

¶4 March 8, 2014, was one of the days that Claimant agreed to work at the Grove hospital. Claimant testified he was asked that morning "if I'd be willing to go to Grove." Claimant testified there was wintry weather that morning, including sleet, and therefore "people were calling in no-show" at the

Grove hospital. Claimant agreed to work at Grove that day because, among other things, the agreed-upon rate, with mileage included, totaled $40 per hour, and the staffing person for Employer agreed that Claimant could leave at 3:00 that afternoon, instead of at 7:00 that evening, after the staffing person "okayed it" with Grove hospital.

¶5 After clocking out of the Grove hospital at 3:15 that afternoon, Claimant went to his car and began his drive back home. He testified he "went up the turnpike," "went through Jay," "cut across the top part of Lake Hudson," and was driving "on the far side of Pryor" when the accident occurred as he was crossing a bridge and his car hydroplaned.[1] Claimant testified he directed his car slightly toward the middle of the road to avoid a deer standing "kind of" in his lane—he testified he wanted to give the deer "some wide berth"—and that as he did so, he hit his breaks and his car hydroplaned. He testified he "was straight off into the ditch and I tried to avoid [it], but I clipped an oak tree." He testified the weather conditions played a role in the accident.

¶6 Claimant testified that during this drive, and therefore at the time of the accident, "I'm what I consider to be on the clock from being paid time and travel." In this regard, Claimant testified that his hourly rate on the day of the accident was $40, but that this included a $2.50 per hour increase over a $37.50 per hour rate to cover his mileage to Grove. He explained on direct examination that for past trips to Grove, his pay check had provided a separate entry, or he had received a separate check, for "gas mileage money per diem, this was for me going to Grove." However, he stated that there was a "constant problem" with his pay check and that "every time you got paid, you had to really watch your check because there would be errors." He stated that "what you talked about between staffing people sometimes didn't get transferred into the computer for the people that paid your check, so you

---

1. In Claimant's Form 3, he stated he sustained injuries in a single-vehicle accident when his

"vehicle slid off road to avoid deer...."

always have to look." He testified that although he had previously been paid "[$]134.20 for the mileage up there," that he "had a conversation with Whitney Robison [i.e., Claimant's supervisor] about this" and how it was just going to be another issue that would ... be messed up.... So at that time she had agreed just to change my pay for up there to be a solid [$]40 [per hour] to include my mileage back and forth, and she said that she would put it in the computer that way.

He stated that Employer "changed it to the $40 an hour to include the mileage," and "that would include my mileage plus my per diem."

¶7 Only one other witness testified at trial-Michelle Logan, Employer's vice president of human resources. She stated that per diem nurses, like Claimant, are "just staffed when we need them," and they are "what we call on a day-to-day basis." On cross-examination, she agreed that Claimant's supervisor had the discretion to offer Claimant mileage reimbursement in addition to his hourly rate. She also testified, however, that it is Employer's policy to pay travel expenses "separately because it's paid at IRS guidelines and it's whatever the IRS rates are" and "it's never included in an hourly rate of pay." However, she testified, "I don't do payroll...."

¶8 In his order filed in June 2014, the ALJ stated that the accident "occurred after [Claimant] ended his shift at the Grove Hospital and had clocked out," and that "Claimant was traveling from his place of employment" at the time of the accident. However, the ALJ found that Claimant's "testimony regarding the payment of travel expenses was credible," and therefore found that "the travel and hourly pay" were combined into the $40 per hour rate. The ALJ determined that this "travel reimbursement is the determinative factor" under 85A O.S. Supp.2014 § 2(13). The ALJ also stated that Claimant

was "sent to Grove at the request of [Employer]," and that Claimant's "activities were in the furtherance of the affairs of [Employer] and were not to and from his place of employment and were in [no] way in furtherance of personal or private affairs of the employee." The ALJ found that the injuries sustained as a result of the accident arose out of and in the course of Claimant's employment, and awarded temporary total disability compensation and reasonable and necessary medical treatment.

¶9 Petitioners sought review by a three-member panel of the Workers' Compensation Commission. Petitioners asserted, among other things, that the ALJ erred (1) in finding Claimant's testimony to be credible regarding payment of mileage for his drive to the Grove hospital; (2) in determining that travel reimbursement is a determinative factor in this case under § 2(13); and (3) in finding that Claimant's activity at the time of the accident was in furtherance of the affairs of Employer and did not constitute "transportation to and from [Claimant's] place of employment," excluded from coverage under § 2(13)(a).

¶10 After a hearing, the Commission, in its Order filed in December 2014, affirmed the decision of the ALJ.[2] From the Order, Petitioners appeal.

## STANDARD OF REVIEW

¶11 Claimant's injuries were sustained in March of 2014. Therefore, the Administrative Workers' Compensation Act, 85A O.S. Supp.2014 §§ 1 through 125 (AWCA), governs this case.[3] As specified in the AWCA, the Commission is an executive agency of the State of Oklahoma, § 19(A), and is subject to the Oklahoma Administrative Procedures Act (OAPA), 75 O.S.2011 & Supp.2014 § 250 et seq., with regard to rulemaking. See 85A

---

**2.** One of the three Commissioners dissented. We also note that, as stated by one of the Commissioners at the hearing, this case is one of the first cases to be decided under the Administrative Workers' Compensation Act.

**3.** The AWCA "shall apply only to claims for injuries and death based on accidents which occur on or after the effective date of this act." 3(B). The effective date of the AWCA is February 1, 2014.

O.S. Supp.2014 § 19(C). However, as to "appeals or disputes arising from actions of the Commission," the AWCA, rather than the OAPA, applies, "except as provided in [the AWCA]." § 19(F).

¶ 12 Pertinent to this case, the AWCA provides that this Court "may modify, reverse, remand for rehearing, or set aside" a judgment, decision, or award of the Commission only if it was: "4. Affected by other error of law; [or] 5. Clearly erroneous in view of the reliable, material, probative and substantial competent evidence[.]" 85A O.S. Supp.2014 § 78(C). In particular, we will review the fact finding regarding payment of Claimant's mileage to determine if it is clearly erroneous in view of the competent evidence; however, we will review *de novo* all legal determinations related to the proper construction of 2(13)—which defines "course and scope of employment"—without deference to the Commission's legal rulings. "Statutory construction presents a question of law. Questions of law are reviewed by a *de novo* standard. Under this standard, we have plenary, independent and nondeferential authority to determine whether the trial court erred in its legal ruling." *Fanning v. Brown*, 2004 OK 7, ¶ 8, 85 P.3d 841 (citations omitted).

## ANALYSIS

*I. The finding that Claimant was compensated for his mileage is not clearly erroneous in view of the substantial competent evidence.*

¶ 13 As stated above, Claimant testified he was compensated for his mileage to and from the Grove hospital. He testified he was not paid separately for this mileage; instead, he testified Employer increased his hourly rate from $37.50 to $40 to compensate him for the mileage. The ALJ expressly found Claimant's testimony credible in this regard.

¶ 14 Employer attempted to contradict Claimant's testimony with the testimony of Michelle Logan, who stated that it is Employer's policy to pay travel separately, consistent with certain IRS guidelines. However, she testified, "I don't do payroll," and could attest to no direct, personal knowledge of whether an arrangement was or was not actually made to pay Claimant a higher hourly rate to compensate him for his mileage to and from Grove.

¶ 15 Logan clearly considered such an arrangement, if it was in fact entered into, to be unusual and even improper. However, we conclude that, despite Logan's testimony, the finding that such an arrangement did exist on the day of the accident is not "[c]learly erroneous in view of the reliable, material, probative and substantial competent evidence[.]" 78(C). *See also Hagen v. Indep. Sch. Dist. No. I–004*, 2007 OK 19, ¶ 8, 157 P.3d 738 ("[T]he credibility of witnesses and the effect and weight to be given to their testimony are questions of fact to be determined by the trier of fact," and "are not questions of law" for this Court on appeal.); *Yocum v. Greenbriar Nursing Home*, 2005 OK 27, ¶ 8, 130 P.3d 213 ("[T]he trial tribunal is the sole judge of the credibility of witnesses and of the weight and value to be accorded to the testimony adduced.") (emphasis omitted) (footnotes omitted).

¶ 16 Petitioners request, in the alternative, that this case be remanded pursuant to 75 O.S.2011 § 322 of the OAPA so that Petitioners might have the opportunity to present the testimony of Whitney Robison, Claimant's supervisor, on this issue. Petitioners present no further law or argument in support of this request. As stated above, although the Commission is subject to the OAPA with regard to rulemaking, the AWCA expressly provides that "[a]ll appeals or disputes arising from actions of the Commission shall be governed by provisions of this act and the Commission shall not be subject to the provisions of the [OAPA], except as provided in this act." 85A O.S. Supp.2014 § 19(F). Section 322 of the OAPA sets forth the circumstances under which this Court may "set aside or modify ..., or reverse ... and remand ... for further proceedings"

orders of administrative agencies. However, the AWCA contains its own version of this statute in 85A O.S. Supp.2014 § 78.

¶ 17 In addition, although this Court may "remand for rehearing" under § 78(C), we may do so "only if [the judgment of the Commission] was" affected by one of the errors listed in § 78(C). Here, Petitioners have not demonstrated that any of those errors occurred requiring that this case be remanded for rehearing. Instead, Petitioners chose to only present the testimony of Logan at the hearing before the ALJ, and at the close of that hearing the ALJ specifically asked Petitioners' counsel: "There's no further witnesses?" To which Petitioners' counsel responded, "No, your Honor."

¶ 18 Because no "unlawful procedure" occurred, § 78(C)(3), that prevented Petitioners from presenting additional testimony or evidence, and because no other error has been shown to have occurred under § 78(C) that might warrant a rehearing, we deny Petitioners' request.

*II. The Commission did not err in finding that Claimant's injuries arose out of the course and scope of his employment.*

¶ 19 In order for an injury to be compensable, the injury must be one "arising out of the course and scope of employment." 85A O.S. Supp.2014 § 2(9). The term "course and scope of employment" is defined under 85A O.S. Supp.2014 § 2(13) as follows:

"Course and scope of employment" means an activity of any kind or character for which the employee was hired and that relates to and derives from the work, business, trade or profession of an employer, and is performed by an employee in the furtherance of the affairs or business of an employer. The term includes activities conducted on the premises of an employer or at other locations designated by an employer and travel by an employee in furtherance of the affairs of an employer that

is specifically directed by the employer. This term does not include:

    a.  an employee's transportation to and from his or her place of employment,

    b.  travel by an employee in furtherance of the affairs of an employer if the travel is also in furtherance of personal or private affairs of the employee,

    c.  any injury occurring in a parking lot or other common area adjacent to an employer's place of business before the employee clocks in or otherwise begins work for the employer or after the employee clocks out or otherwise stops work for the employer, or

    d.  any injury occurring while an employee is on a work break, unless the injury occurs while the employee is on a work break inside the employer's facility and the work break is authorized by the employee's supervisor[.]

¶ 20 In this case, Claimant's injuries occurred after he had ended his shift and clocked out of his place of employment for the day, and while he was driving home on a public roadway.[4] Under § 2(13)(a), the Legislature has expressly excluded from the definition of course and scope of employment "an employee's transportation to and from his or her place of employment[.]" However, this language is substantially similar to what, under the Workers' Compensation Act, was the general rule: i.e., that "an injury suffered by an employee while on [the employee's] way to or from [the employee's] regular work does *not* arise out of and in the course of [the] employment...." *Lucas v. Triad Drilling Co.*, 1998 OK 98, ¶ 11, 969 P.2d 363 (emphasis added) (citation omitted). *See also Turner v. B Sew Inn*, 2000 OK 97, ¶ 15, 18 P.3d 1070 ("Ordinarily, an injury sustained while going to or from an employer's premises is not one which arises out of and in the course of employment within the meaning of the Act.") (footnote omitted). The Supreme Court has stated:

Unless a contrary intent clearly appears, if a statute previously construed by courts

4.  We note that Claimant's counsel admits in the Answer Brief that "[w]hen Claimant left the

Grove hospital, he was on his way home." Answer Br. at 6.

of last resort is reenacted in the same, or substantially the same terms, the Legislature is presumed to have been familiar with its construction, and to have adopted such construction as an integral part of the statute.

*Special Indem. Fund v. Bedford,* 1993 OK 60, ¶ 8, 852 P.2d 150 (footnote omitted). We interpret 2(13)(a), which is substantially similar to, if not virtually the same as, the general rule excluding from coverage what have been called "going and coming injuries," to be an express attempt by the Legislature to adopt that general rule.

¶ 21 Furthermore, in the AWCA, it appears the Legislature has expressly adopted, abrogated, or modified certain formerly-recognized exceptions to the general rule. Under the Workers' Compensation Act, the general rule did "not apply where the employee sustain[ed] an accidental injury while going to or returning from [the employee's] place of work *to perform a special task outside of [the employee's] regular hours at the request of [the] employer and for the employer's benefit.*" *Lucas,* 1998 OK 98, ¶ 11, 969 P.2d 363 (emphasis added) (citation omitted). For example, in *Lucas,* the Supreme Court discussed one of its earlier cases, as follows:

> In *Stroud Municipal Hospital v. Mooney,* 1996 OK 127, 933 P.2d 872, Mooney, a lab worker in a hospital, was called at home on his lunch break to return to work to perform blood tests. On his way back to the hospital Mooney was injured in an automobile accident. We held that Mooney's accidental injury was covered by the Workers' Compensation Act under the special task exception because, "The special-task mission, begun under the employer's direction during claimant's off-the-premises lunch break, subjected him to the roadway hazards in action."

*Lucas,* ¶ 12 (citation omitted). As quoted above, the statutory definition of "course and scope of employment" set forth in the AWCA expressly "includes ... travel by an employee in furtherance of the affairs of an employer that is specifically directed by the employ-

er." Therefore, it appears the Legislature has expressly adopted the special task or special mission exception to the general rule.

¶ 22 The special task exception was not the only formerly recognized exception to the general rule. Under the Workers' Compensation Act, a number of other exceptions were recognized, including where "the employer furnishes the transportation *or pays travel expenses* [.]" *Stroud Mun. Hosp. v. Mooney,* 1996 OK 127, ¶ 6, 933 P.2d 872 (emphasis added). *See also Barnhill v. Smithway Motor Express,* 1999 OK 82, ¶ 18, 991 P.2d 527 ("[E]ven accidents involving an employee's own vehicle will fall within the Act's coverage if a claimant ... is compensated for travel to and from the work site and the injury occurs during such compensated travel time period."); *L.E. Jones Drilling Co. v. Hodge,* 2013 OK CIV APP 111, ¶ 7, 315 P.3d 1025 (cert. denied) ("[W]here the employer paid the employee travel expenses for the going and coming trip, or the employer furnished the employee with a vehicle for the going and coming trip, the going and coming trip fell within 'the scope of the employment'" under the Act "because the journey was considered to be a part of the service for which the employee was compensated.") (citation omitted).

¶ 23 Other exceptions to the general rule included situations in which "the injury occurs on premises owned or controlled by the employer," or "when the employee is engaged in a dual purpose trip." *Stroud,* 1996 OK 127, ¶ 6, 933 P.2d 872. *See B Sew Inn,* 2000 OK 97, ¶ 1, 18 P.3d 1070 ("[A]n employee who is entering the workplace to begin work may recover compensation for injuries sustained in the employer's parking lot.").

¶ 24 As stated above, the Legislature appears to have expressly adopted the special task exception by including within the definition of course and scope of employment "travel by an employee in furtherance of the affairs of an employer that is specifically directed by the employer." On the other hand, it appears the Legislature, in § 2(13), has expressly abolished or changed other

formerly recognized exceptions. For example, under § 2(13)(b), the Legislature has expressly excluded "travel by an employee in furtherance of the affairs of an employer if the travel is also in furtherance of personal or private affairs of the employee." Accordingly, it would appear it is now the intent of the Legislature that an employee engaged in a "dual purpose trip" no longer be compensated for injuries occurring during such travel.

¶ 25 In addition, the exclusions set forth in §§ 2(13)(c) & 2(13)(d) also appear to constitute clear departures from formerly recognized exceptions. For example, § 2(13)(c), which excludes "any injury occurring in a parking lot or other common area adjacent to an employer's place of business before the employee clocks in or otherwise begins work for the employer or after the employee clocks out or otherwise stops work for the employer," appears to be a clear departure from the exception to the general rule, quoted above, for injuries occurring on premises owned or controlled by the employer, such as injuries occurring in the employer's parking lot when an employee is entering the workplace to begin work.

¶ 26 However, and pertinent to this case, the Legislature has *not* expressly abolished or changed the exception, quoted above, relating to scenarios in which a claimant is compensated for travel to and from the work site. We must presume that the Legislature was aware of this exception, but chose not to abolish or otherwise change it. A similar issue was addressed by a separate Division of this Court when interpreting the definition of course and scope of employment set forth in the Workers' Compensation Code,[5] and, in particular, when determining whether the Legislature's silence in the Code as to the exception for employer-provided transportation was indicative of an abrogation of that exception. The Court stated that, "[a]s to the ... exception for employer-provided transportation, however, the Legislature said nothing. Legislative silence on a well-established point of law is *not* indicative

of the abrogation of prior law. Repeals by implication are not favored." *L.E. Jones,* 2013 OK CIV APP 111, ¶ 10, 315 P.3d 1025 (emphasis added) (citations omitted) (footnote omitted). We similarly conclude that the Legislature's silence as to the travel-expenses exception to the going and coming rule is not indicative of an abrogation or modification of that particular exception under 2(13). Consequently, that exception survives intact under the AWCA, and it applies to this case.

¶ 27 Here, Claimant was compensated for his mileage to the Grove hospital. The Grove hospital was located farther away from his home than several of the other hospitals where Claimant normally worked, and Claimant testified: "The only place I've ever been paid mileage is going to Grove." Claimant's testimony suggests that in order to entice employees to drive all the way to Grove, especially through the wintry weather, that Employer was offering to reimburse them for their mileage. As we concluded above, the ALJ did not err in finding Claimant was so reimbursed for his mileage to and from Grove, and we now further conclude the ALJ did not err in finding that this payment toward Claimant's travel expenses resulted in the accident falling within the definition of "course and scope of employment" under the travel-compensation exception, quoted above, which considers compensated travel "to be a part of the service for which the employee was compensated." *L.E. Jones,* ¶ 7 (citation omitted). Accordingly, the Commission did not err in affirming the decision of the ALJ, and we sustain the Commission's Order.

### CONCLUSION

¶ 28 The Commission properly affirmed the order of the ALJ. Therefore, we sustain the Commission's Order.

¶ 29 **SUSTAINED.**

RAPP, P.J., and THORNBRUGH, J., concur.

---

5. We note that the Workers' Compensation Code replaced the Workers' Compensation Act, but only for a few years before it was in turn replaced, in 2014, by the AWCA.