SEQUEL YOUTH & FAMILY SERVICES LLC v. AYISI



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:SEQUEL YOUTH & FAMILY SERVICES LLC v. AYISI

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 SEQUEL YOUTH & FAMILY SERVICES LLC v. AYISI
2018 OK CIV APP 7
Case Number: 116109
Decided: 01/04/2018
Mandate Issued: 01/31/2018
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2018 OK CIV APP 7, __ P.3d __

 

SEQUEL YOUTH & FAMILY SERVICES LLC and TRAVELERS INDEMNITY CO. OF AMERICA, Petitioners,
v.
MARCELLA AYISI and THE OKLAHOMA WORKERS' COMPENSATION COMMISSION, Respondents.
PROCEEDING TO REVIEW AN ORDER OF
THE WORKERS' COMPENSATION COMMISSION
HONORABLE MICHAEL T. EGAN, ADMINISTRATIVE LAW JUDGE
VACATED AND REMANDED FOR FURTHER PROCEEDINGS
Mia C. Rops, DAVID KLOSTERBOER & ASSOCIATES, Oklahoma City, Oklahoma, for Petitioners
Bob Burke, Oklahoma City, Oklahoma, and Jeffrey M. Cooper, Oklahoma City, Oklahoma, for Respondent
DEBORAH B. BARNES, PRESIDING JUDGE:
¶1 Petitioners (collectively, Employer) seek review of an order of the Workers' Compensation Commission affirming the order of the Administrative Law Judge (ALJ) who found Marcella Ayisi (Claimant) sustained compensable injuries to both of her knees arising out of the course and scope of her employment. Based on our review, we vacate and remand for further proceedings.
BACKGROUND
¶2 Claimant filed a Form 3 alleging she sustained injuries to both knees as a result of an accident that occurred while working as a residential counselor for Employer. She alleged she fell while assisting a resident on August 26, 2015, landing directly on both knees. At trial, Claimant testified she worked with special needs children for Employer and that the fall occurred when she tripped over a child's foot and onto "a concrete floor with ceramic tile on top of it." She testified "[t]he total impact was on my knees," and testified she heard and felt a "snap." Claimant's fall was witnessed by her supervisor who helped Claimant afterward.
¶3 Claimant testified she was not having any problems with her knees prior to the accident, though she testified she had knee surgery performed on her right knee -- a "right knee arthroscopic procedure" -- in the year 2000. Claimant testified she was released "full duty" soon after that surgery, and she testified she had been working for sixteen years prior to the fall and had never been placed on any form of restrictions for her right knee. She further testified she had not been prescribed any medication or therapy for either knee prior to the fall, and she testified that, regarding her left knee, she had never received any prior treatment.
¶4 Claimant testified that now, i.e., following the August 26, 2015 incident, she has "excruciating pain all the time" in addition to "swelling." She testified she has had to "compensate with [her] left knee," but that her "left knee is almost as bad as the right knee[.]" She testified she is "limited in so much of [her] mobility" and has not been able to return to work in any capacity.
¶5 Employer stated at trial that it "specifically denies that [Claimant] sustained any compensable injury under the [Administrative Workers' Compensation Act (AWCA)]." Employer explained: "More specifically, we are denying that [Claimant] has an injury that was solely caused by her accident." Employer stated: "we are alleging that [Claimant's] current condition . . . not only wasn't caused by her accident, but is specifically excluded under Section 2(9)(b)(5)" of the AWCA because "[t]he only diagnosis in any medical record is osteoarthritis." Employer asserted osteoarthritis is "excluded as a compensable injury under 2(9)(b)(5)." Employer also asserted, in the alternative, that there is no "objective medical evidence that [Claimant] has a compensable injury" as "defined by 2(31)(a)" of the AWCA; tha`t the accident is not the major cause of Claimant's injuries; and that "at least with regard[] to the right knee, [Claimant] has a preexisting condition. She had a prior surgery. [But] . . . there is no evidence at all to support a significant or identifiable aggravation of that right knee condition."
¶6 In the order filed in December 2016, the ALJ found Claimant sustained compensable injuries to both of her knees arising out of the course and scope of her employment, and ordered Employer to provide Claimant with reasonable and necessary medical treatment. The ALJ's order notes that in the January 2016 medical report of Dr. Kevin Hargrove, he diagnosed Claimant
as having osteoarthritis in both knees but also said that there had been an exacerbation as a result of the fall. He also stated: "These knees are advancing gradually toward the need for arthroplasty. However, this patient has been informed that her problem is currently an exacerbation of her pre-existing problem."
¶7 The ALJ's order further notes that an independent medical examiner -- Dr. Paul Maitino -- was appointed by the Commission
to address several issues, including the specific diagnosis of the Claimant's current condition and whether it was caused by Claimant's work related accident and whether Claimant has a significant and identifiable aggravation of a preexisting condition.
Dr. Maitino's report . . . gave a very clear diagnosis: significant and identifiable aggravation of preexisting osteoarthritis in both knees with valgus deformity. . . . [In his deposition he] testified that the preexisting condition was Grade IV arthritis. On cross examination, he said that her meniscal tear was due to her arthritic condition. Later he said that none of the findings were based on an acute injury. When asked to identify what the aggravation of her right knee was, he stated that her pain was the only identifiable aggravatio. 
The ALJ's order also notes that there "is a dispute as to whether [Claimant] had complaints about her knees before the fall. She denied any such complaints but Dr. Hargrove's records indicate that she had popping in both knees with squatting and climbing stairs before she sustained the fall[.]"
¶8 The ALJ's order states that "[o]ne way for the Claimant to recover benefits is found in 85A [O.S.] § 2(9)(b)(6) which allows an exception when the Claimant can show an identifiable and significant aggravation of a 'pre-existing condition.'" The order notes that "[t]he consensus of all the doctors involved is that the Claimant has a significant pre-existing condition (osteoarthritis)." However, the ALJ determined that, regarding Claimant's right knee, Claimant "has shown an identifiable and significant aggravation of that condition" as a result of the fall. In addition to the evidence discussed earlier in the ALJ's order, the ALJ pointed out that the medical notes of the physician's assistant at the clinic Claimant visited on the date of the fall state that Claimant "had contusions on both knees." The ALJ also noted that Dr. Hargrove's initial report "found osteoarthritis of both knees but also found an exacerbation as a result of the fall."
¶9 Regarding Claimant's left knee, the ALJ found that
[b]ecause of the limited definition of "Preexisting condition" found in 85A § 2(36)[,] [Claimant] does not need to show an identifiable and significant aggravation of a pre-existing condition as to her left knee. No evidence was provided that the Claimant ever received or had treatment recommended for her left knee, so there is no requirement to show a significant and identifiable aggravation of a pre-existing condition. The Commission finds that Claimant is entitled to treatment for the left knee . . . .
¶10 Employer appealed the ALJ's order to the Commission En Banc. The Commission found the ALJ's "decision was supported by a preponderance of the credible evidence and correctly applied the law and, therefore, was neither against the clear weight of the evidence, nor contrary to law," and affirmed. From the order of the Commission affirming the decision of the ALJ, Employer seeks review.
STANDARD OF REVIEW
¶11 The date of injury in this case is in August 2015. Therefore, the Administrative Workers' Compensation Act, 85A O.S. Supp. 2014 §§ 1 through 125, governs this case.[1] Pertinent to this case, the AWCA provides that this Court "may modify, reverse, remand for rehearing, or set aside" a judgment, decision, or award of the Commission if it is: "4. Affected by . . . error of law[.]" 85A O.S. Supp. 2014 § 78(C). In particular, the issue presented on appeal is one of statutory construction. "Statutory construction presents a question of law. Questions of law are reviewed by a de novo standard. Under this standard, we have plenary, independent and nondeferential authority to determine whether the trial court erred in its legal ruling." Robison Med. Res. Grp. v. True, 2015 OK CIV APP 94, ¶ 12, 362 P.3d 1155 (citation omitted). See also Maxwell v. Sprint PCS, 2016 OK 41, ¶ 4, 369 P.3d 1079.
ANALYSIS
¶12 Title 85A O.S. Supp. 2014 § 2 provides in pertinent part as follows:
9. a. "Compensable injury" means damage or harm to the physical structure of the body . . . caused solely as the result of either an accident, cumulative trauma or occupational disease arising out of the course and scope of employment. . . . 
. . . .
b. "Compensable injury" does not include:
. . . 

(5) any strain, degeneration, damage or harm to, or disease or condition of, the eye or musculoskeletal structure or other body part resulting from the natural results of aging, osteoarthritis, arthritis, or degenerative process including, but not limited to, degenerative joint disease, degenerative disc disease, degenerative spondylosis/spondylolisthesis and spinal stenosis, or
(6) any preexisting condition except when the treating physician clearly confirms an identifiable and significant aggravation incurred in the course and scope of employment.
¶13 In Estenson Logistics v. Hopson, 2015 OK CIV APP 71, 357 P.3d 486, a separate division of this Court stated that a claimant's "degenerative joint disease in his left hip" was compensable if the claimant "show[ed] that there was physical damage or harm caused by an on-the-job accident and that his treating physician confirmed an identifiable and significant aggravation." Id. ¶ 10. Thus, the Hopson Court, in effect, read subsections 2(9)(b)(5) and (6) together such that the claimant's degenerative joint disease constituted a "preexisting condition" subject to the exception set forth in § 2(9)(b)(6).
¶14 It is not clear, however, that the Legislature intended that all degenerative conditions, such as the degenerative joint disease in Hopson and the osteoarthritis in the present case,[2] should be treated as preexisting conditions under § 2(9)(b)(6) and, as a consequence, be compensable when (and only when) "the treating physician clearly confirms an identifiable and significant aggravation incurred in the course and scope of employment." In the past -- i.e., under both the Workers' Compensation Code (the Code) and the Workers' Compensation Act (the WCA)[3] -- such conditions were excluded if they were the result of "the ordinary, gradual deterioration or progressive degeneration caused by the aging process," but compensable if "the employment is a major cause of the deterioration or degeneration and is supported by objective medical evidence[.]" See 85 O.S. Supp. 2010 § 3(13)(d); 85 O.S. 2011 § 308(10)(c). The corresponding language in the AWCA is substantially similar to that found in the Code and the WCA except that the major cause language has been removed. However, as discussed at greater length further below, legislative silence is rarely to be taken as clear legislative intent to abrogate an established construction.
¶15 Moreover, the term "preexisting condition" has a limited definition in the AWCA -- it "means any illness, injury, disease, or other physical or mental condition, whether or not work-related, for which medical advice, diagnosis, care or treatment was recommended or received preceding the date of injury[.]" 85A O.S. Supp. 2014 § 2(36). The facts of the present case bring into clear relief an absurd consequence that results from automatically treating osteoarthritis under § 2(9)(b)(6). Here, one of Claimant's knees received medical care preceding the date of injury; the other did not. Thus, the ALJ applied the "identifiable and significant aggravation" test to Claimant's right knee, the knee that had received prior treatment, but, regarding her left knee, stated, as quoted at greater length above: "Because of the limited definition of "Preexisting condition" . . . [Claimant] does not need to show an identifiable and significant aggravation . . . as to her left knee. . . . The Commission finds that Claimant is entitled to treatment for the left knee . . . ." Having concluded Claimant's left knee did not constitute a preexisting condition as defined in the AWCA, the ALJ was apparently left without any standard by which to judge the compensability of that injury, yet found it to be compensable.
¶16 Employer argues the ALJ should have determined Claimant was simply without any remedy; that is, because at least some of Claimant's degeneration or deterioration existed prior to the fall, the legislative intent is to bar her from any compensation, regardless of the extent of the degeneration or deterioration caused by the work-related incident. We conclude, however, that neither Employer's interpretation, nor the ALJ's interpretation, is consistent with the legislative intent.
¶17 "The primary goal of statutory construction is to ascertain and follow legislative intent." Legarde-Bober v. Okla. State Univ., 2016 OK 78, ¶ 11, 378 P.3d 562. "It is a well-settled rule of statutory construction that where a matter is addressed by two statutes, one specific and one general, the specific statute controls." Sprowles v. Thompson, 2010 OK CIV APP 80, ¶ 21, 239 P.3d 981 (citation omitted). That is, a "specific statute, which clearly includes the matter in controversy and prescribes a different rule, governs over the general statute." Hall v. Globe Life & Acc. Ins. Co. of Okla., 1999 OK 89, ¶ 5, 998 P.2d 603 (citation omitted). Subsection 2(9)(b)(5) specifically addresses osteoarthritis. Moreover, and as indicated above, the prior version of what is now § 2(9)(b)(5) also excluded deterioration and degeneration caused by the aging process, but allowed compensation if the employment was the major cause of the deterioration or degeneration. Thus, a different rule, at least in the prior version, was prescribed for determining the compensability of conditions like osteoarthritis -- i.e., the test to be applied was whether the employment was the major cause of the degeneration or deterioration, not whether "the treating physician clearly confirms an identifiable and significant aggravation incurred in the course and scope of employment," as set forth under § 2(9)(b)(6).
¶18 "Unless a contrary intent clearly appears or is plainly expressed, the terms of amendatory acts retaining the same or substantially similar language as the provisions formerly in force will be accorded the identical construction to that placed upon them by preexisting case law." Maxwell v. Sprint PCS, 2016 OK 41, ¶ 6, 369 P.3d 1079 (emphasis in original) (footnote omitted). The exclusion set forth in the Code and WCA, though less verbose, contained substantially similar language: i.e., "'Compensable injury' shall not include the ordinary, gradual deterioration or progressive degeneration caused by the aging process[.]" 85 O.S. 2011 § 308(10)(c). Comparing this language to that found in § 2(9)(b)(5) of the AWCA, one finds the same core, causative phrase -- i.e., degeneration "resulting from the natural results of aging" is excluded. We disagree with Employer that the legislative intent of this provision is to bar all degeneration or deterioration, whether resulting from the natural results of aging or from the employment. But we also disagree with the ALJ's interpretation which renders this provision without any meaning or effect such that all preexisting conditions, even those specifically enumerated in § 2(9)(b)(5), are compensable only under the test set forth in § 2(9)(b)(6).[4]
¶19 It is true that the exclusion in the Code and WCA, quoted above, immediately sets forth the following exception: "unless the employment is a major cause of the deterioration or degeneration and is supported by objective medical evidence," and that the current version of the exclusion found in the AWCA does not contain this language. However, as stated above, legislative silence is rarely to be construed as an indication on the part of the Legislature to depart from the earlier version and its established interpretation in prior case law.
Legislative familiarity with extant judicial construction of statutes is presumed. Unless a contrary intent clearly appears or is plainly expressed, the terms of amendatory acts retaining the same or substantially similar language as the provisions formerly in force will be accorded the identical construction to that placed upon them by preexisting case law.
Special Indem. Fund v. Figgins, 1992 OK 59, ¶ 8, 831 P.2d 1379 (emphasis added) (footnote omitted). "Legislative silence on a well-established point of law is not indicative of the abrogation of prior law. Repeals by implication are not favored." Robison Med. Res. Grp. v. True, 2015 OK CIV APP 94, ¶ 26, 362 P.3d 1155 (citation omitted).
¶20 The current version of this exclusion -- § 2(9)(b)(5) -- no longer contains any mention of the "major cause" test used, in past cases,
[5] to differentiate those degenerative conditions which are not compensable because they are the natural result of aging from those which are compensable because they are the result of the employment. However, given the substantially similar language involved, we conclude the mere legislative silence as to the appropriate test does not suffice to signal the abrogation of that test.
¶21 As indicated above, Employer's position is that the legislative intent of § 2(9)(b)(5) is to render all bodily degeneration or deterioration non-compensable if at least a portion of that degeneration or deterioration resulted from the natural results of aging rather than solely from the employment. For example, as argued by Employer at trial, "we are denying that [Claimant] has an injury that was solely caused by her accident." Such an interpretation would result in denying compensability to workers with even the slightest pre-injury joint degeneration or deterioration resulting from natural aging. Such an interpretation finds support in a plain, but out-of-context, reading of the new definition of compensable injury. Compensable injury is now defined in the AWCA, in pertinent part, as "damage or harm to the physical structure of the body . . . caused solely as the result of either an accident, cumulative trauma or occupational disease arising out of the course and scope of employment." 85A O.S. Supp. 2014 § 2(9)(a) (emphasis added). The Code and WCA, by contrast, defined compensable injury as "any injury . . . which arises out of and in the course of employment if such employment was the major cause of the specific injury or illness." 85 O.S. 2011 § 308(10)(a) & Supp. 2010 § 3(13)(a) (emphasis added). However, while the meaning of the new phrase -- "caused solely" -- may seem plain when viewed in isolation, such a plain reading turns out to be untenable in light of the statute as a whole. See Dep't of Revenue of Oregon v. ACF Indus., Inc., 510 U.S. 332, 343 (1994) (While the meaning of a phrase may seem plain "when viewed in isolation," such a reading will not be adopted if "untenable in light of [the statute] as a whole.") (citations omitted).
¶22 As explained by the Oklahoma Supreme Court, "Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." Okla. Pub. Employees Ass'n v. State ex rel. Okla. Office of Pers. Mgmt., 2011 OK 68, ¶ 11, 267 P.3d 838 (per curiam) (footnotes omitted). Moreover, "[t]his court will not assume that the Legislature has done a vain and useless act. Rather it must interpret legislation so as to give effect to every word and sentence." Hill v. Bd. of Educ., 1997 OK 111, ¶ 12, 944 P.2d 930 (citations omitted). "[A]n inept or incorrect choice of words" will not be "applied or construed in a manner to defeat the real or obvious purpose of a legislative enactment." TRW/Reda Pump v. Brewington, 1992 OK 31, ¶ 5, 829 P.2d 15 (citation omitted). See also Anderson v. Eichner, 1994 OK 136, ¶ 15 n.31, 890 P.2d 1329 ("This Court will not assume that the legislature has done a vain or useless act; it must interpret legislation so as to give effect to every word and sentence rather than rendering some provisions nugatory.") (citations omitted).
¶23 Section 2 of the AWCA provides:
27. "Major cause" means more than fifty percent (50%) of the resulting injury, disease or illness. A finding of major cause shall be established by a preponderance of the evidence. A finding that the workplace was not a major cause of the injury, disease or illness shall not adversely affect the exclusive remedy provisions of this act and shall not create a separate cause of action outside this act[.]
(Emphasis added.) If possible, an interpretation of the "caused solely" language found in § 2(9)(a) which, among other things, gives effect to this major cause provision and harmonizes it with other provisions in the act, which avoids rendering § 2(9)(b)(5) a vain and useless provision, and which avoids serious constitutional pitfalls,
[6] will be adopted. In the context of the present case involving osteoarthritis, we conclude it is the legislative intent that osteoarthritis resulting from the natural results of aging is not compensable unless the employment is the major cause of the deterioration or degeneration and such a finding is supported by objective medical evidence.
¶24 Therefore, we conclude the ALJ erred in applying the standard set forth in § 2(9)(b)(6), and we vacate the Commission's order affirming the order of the ALJ. We remand this case to the ALJ for further proceedings.
CONCLUSION
¶25 "The primary goal of statutory construction is to ascertain and follow legislative intent." Legarde-Bober, 2016 OK 78, ¶ 11. "Unless a contrary intent clearly appears or is plainly expressed, the terms of amendatory acts retaining the same or substantially similar language as the provisions formerly in force will be accorded the identical construction to that placed upon them by preexisting case law." Maxwell, 2016 OK 41, ¶ 6. "Legislative silence on a well-established point of law is not indicative of the abrogation of prior law. Repeals by implication are not favored." True, 2015 OK CIV APP 94, ¶ 26. "Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." Okla. Pub. Employees Ass'n, 2011 OK 68, ¶ 11.
¶26 Section 2(9)(b)(5) of the AWCA, when compared to the Code and the WCA, no longer contains any mention of the "major cause" test used, in past cases, to differentiate those degenerative conditions which are not compensable because they are the natural result of aging from those which are compensable because they are the result of the employment. However, the language of § 2(9)(b)(5) of the AWCA is substantially similar to the language found in the corresponding provisions in the Code and WCA. Moreover, the language of the major cause subsection of § 2 of the AWCA states, among other things, that "[a] finding of major cause shall be established by a preponderance of the evidence," and dictates that the exclusive remedy provisions apply even where a finding is made "that the workplace was not a major cause of the injury, disease or illness[.]" We conclude the mere legislative silence as to the major cause test in § 2(9)(b)(5) does not suffice to signal the abrogation of that test.
¶27 Thus, we conclude it is the legislative intent that, in this case, Claimant's osteoarthritis, if resulting from the natural results of aging, is not compensable unless it is found that the employment is the major cause of the deterioration or degeneration and such a finding is supported by objective medical evidence. This same test applies to both of Claimant's knees. Any other interpretation would result in absurd consequences and vain and useless provisions, and would fail to effectuate the legislative intent. Consequently, we vacate the Commission's order affirming the order of the ALJ, and we remand this case to the ALJ for further proceedings consistent with this Opinion.
¶28 VACATED AND REMANDED FOR FURTHER PROCEEDINGS.
THORNBRUGH, V.C.J., and WISEMAN, J., concur.
FOOTNOTES
[1] The AWCA provides that it "shall apply only to claims for injuries and death based on accidents which occur on or after the effective date of this act." § 3(B). The effective date of the AWCA is February 1, 2014. See also Brown v. Claims Mgmt. Res. Inc., 2017 OK 13, ¶ 9, 391 P.3d 111 ("In the realm of workers' compensation, the law in effect at the time of the injury controls both the award of benefits and the appellate standard of review.") (citations omitted).
[2] We note that "degenerative joint disease" appears to simply be another name for osteoarthritis. That is, osteoarthritis "is caused by damage or breakdown of joint cartilage between bones," and "[i]t is sometimes called degenerative joint disease or 'wear and tear' arthritis. It most frequently occurs in the hands, hips, and knees. . . . [T]he cartilage and bones within a joint begin to break down." CDC, Osteoarthritis, www.cdc.gov. See also MedicineNet, Degenerative joint disease, www.medicinenet.com ("Degenerative joint disease: Also known as osteoarthritis"); Mayo Clinic, Osteoarthritis, www.mayoclinic.org.osteoarthritis (Osteoarthritis "is the most common form of arthritis . . . . It occurs when the protective cartilage on the ends of your bones wears down over time.").
[3] The Code applies to cases in which the alleged injury occurred prior to the effective date -- February 1, 2014 -- of the AWCA, and the WCA applies to cases in which the alleged injury occurred prior to the enactment of the Code in 2011.
[4] As indicated above, the ALJ's interpretation also leaves work-related degeneration or deterioration, which is combined with some degree of age-related degeneration or deterioration, without any compensability standard if the condition was untreated and undiagnosed prior to the on-the-job accident and is not a "preexisting condition" under the AWCA.
[5] See, generally, Rural Waste Mgmt. & Indem. Ins. Co. of N. Am. v. Mock, 2012 OK 101, 292 P.3d 24; Bed Bath & Beyond, Inc. v. Bonat, 2008 OK 47, 186 P.3d 952; Berg v. Parker Drilling Co., 2004 OK 72, 98 P.3d 1099. See also 1st Staffing Grp. USA v. Brawley, 2013 OK CIV APP 26, ¶ 26, 298 P.3d 1195 ("Medical opinions supporting employment as the major cause of occupational disease or age-related deterioration or degeneration, must be supported by objective medical evidence.") (emphasis added) (quoting Rule 20(c), Rules of the Workers' Compensation Court, 85 O.S. Supp. 2006, ch. 4, app.).
[6] "If there are two possible interpretations[,] one of which would hold the statute unconstitutional, the construction must be applied which renders it constitutional." Application of Okla. Capitol Imp. Auth., 1998 OK 25, ¶ 8, 958 P.2d 759 (footnote omitted). The Oklahoma Supreme Court has made clear in reviewing decisions of the Commission that, for example,
[t]he due process clause of the Oklahoma Constitution protects "citizens from arbitrary and unreasonable action by the state." City of Edmond v. Wakefield, 1975 OK 96, ¶ 6, 537 P.2d 1211, 1213. "[S]tate statutes which attempt to take away vested property interest, or work an arbitrary forfeiture of property rights are unconstitutional as violations of due process." Id. (internal citations omitted).
Maxwell v. Sprint PCS, 2016 OK 41, ¶ 22, 369 P.3d 1079. In addition, where a law "singles out less than an entire class of similarly affected persons or things for different treatment, it is a special law," which is constitutional only if it "is so substantially related to a valid legislative objective that it will survive the constitutional challenge." Vasquez v. Dillard's, Inc., 2016 OK 89, ¶ 12, 381 P.3d 768 (footnote omitted). A reading of § 2(9)(a) which denies compensation, for example, to a worker who sustained a work-related injury to a body part solely on the basis that that worker had an age-related degeneration or deterioration, however slight, to that body part prior to the injury would immediately raise constitutional concerns stemming from the arbitrary and unreasonable denial of a remedy to a large class of injuries. But this is not the only available reading of § 2(9)(a) and, as stated above, to arrive at such a reading requires, among other things, taking a provision out of context and failing to ascertain legislative intent "from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." Okla. Pub. Employees Ass'n, 2011 OK 68, ¶ 11.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2010 OK CIV APP 80, 239 P.3d 981, SPROWLES v. THOMPSON
Discussed
 2013 OK CIV APP 26, 298 P.3d 1195, 1ST STAFFING GROUP USA v. BRAWLEY
Discussed
 2015 OK CIV APP 71, 357 P.3d 486, ESTENSON LOGISTICS v. HOPSON
Discussed
 2015 OK CIV APP 94, 362 P.3d 1155, ROBISON MEDICAL RESOURCE GROUP v. TRUE
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 31, 829 P.2d 15, 63 OBJ 682, TRW/Reda Pump v. Brewington
Discussed
 1992 OK 59, 831 P.2d 1379, 63 OBJ 1377, Special Indem. Fund v. Figgins
Discussed
 1994 OK 136, 890 P.2d 1329, 65 OBJ 4037, Anderson v. Eichner
Discussed
 1997 OK 111, 944 P.2d 930, 68 OBJ 2775, HILL v. BOARD OF EDUCATION
Discussed
 1999 OK 89, 998 P.2d 603, 70 OBJ 3342, Hall v. Globe Life & Accident Insurance Co. of Oklahoma
Discussed
 2004 OK 72, 98 P.3d 1099, BERG v. PARKER DRILLING COMPANY
Discussed
 2008 OK 47, 186 P.3d 952, BED BATH & BEYOND, INC. v. BONAT
Discussed
 2011 OK 68, 267 P.3d 838, OKLA. PUBLIC EMPLOYEES ASSOC. v. STATE ex rel. OKLA. OFFICE OF PERSONNEL MANAGEMENT
Discussed at Length
 2012 OK 101, 292 P.3d 24, RURAL WASTE MANAGEMENT AND INDEMNITY INSUR. CO. OF NORTH AMERICA v. MOCK
Discussed
 1975 OK 96, 537 P.2d 1211, CITY OF EDMOND v. WAKEFIELD
Discussed
 2016 OK 41, 369 P.3d 1079, MAXWELL v. SPRINT PCS
Discussed at Length
 2016 OK 78, 378 P.3d 562, BOBER v. OKLAHOMA STATE UNIVERSITY
Discussed at Length
 2016 OK 89, 381 P.3d 768, VASQUEZ v. DILLARD'S, INC.
Discussed
 2017 OK 13, 391 P.3d 111, BROWN v. CLAIMS MANAGEMENT RESOURCES INC.
Discussed
 1998 OK 25, 958 P.2d 759, 69 OBJ 1183, In Re: OKLAHOMA CAPITOL IMPROVEMENT
Discussed
Title 85. Workers' Compensation
 Cite
Name
Level

 85 O.S. 308, Definitions
Discussed at Length
 85 O.S. 3, Repealed
Cited
Title 85A. Workers' Compensation
 Cite
Name
Level

 85A O.S. 1, Short Title
Cited
 85A O.S. 2, Definitions
Discussed at Length
 85A O.S. 78, Workers' Compensation Commission - Appeal to Commission - Appeal to Supreme Court
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA